[Civ. No. 696.   First Appellate District.—December 20, 1909.]

# BELINDA J. PAYNE, Respondent, v. ANNA B. PAYNE, Appellant.

SETTING ASIDE DEED—OLD AGE AND ENFEEBLED CONDITION OF GRANTOR —WANT OF INDEPENDENT ADVICE—CLANDESTINE PROCUREMENT.— A deed was properly set aside in equity where the grantor, though not mentally incompetent, was enfeebled by old age, sickness, and nervousness, with occasional delirium and incoherence, was bed-ridden and expressed fears of losing her property, and who had no independent advice as to the deed and none was suggested by the grantee, her daughter in law, whose attorney drew the deed, which was executed and acknowledged in the home of her daughter during her absence, without notice to her, otherwise than by recording the deed; notwithstanding it further appears that the daughter in law and her children were much beloved by the grantor, and at the grantor's request she left her home to nurse and care for her in her illness, and had devoted her time and attention to her in kindness for several weeks prior to the deed, and there is no proof of intentional fraud or deceit on her part.

ID.—SUPPORT OF FINDING OF TRIAL JUDGE.—In such case, even if this court had doubts as to whether or not the deed was the free, voluntary act of the plaintiff, and were inclined to believe that it was, the finding of the trial judge who saw and heard defendant upon the witness-stand would not be interfered with by this court.

ID.—PREFERABLE RESTORATION OF PROPERTY.—If error is committed by the court in such case, it is better to err in favor of restoring the property of a feeble old woman to her dominion, than to err in upholding a deed given under such circumstances as to cast suspicion upon it.

ID.—RULE IN COURTS OF EQUITY—PARTIES IN CONFIDENTIAL RELATION.— Courts of equity view gifts and contracts made between parties occupying confidential relations with a jealous eye, and forbid any person, standing in a fiduciary position, from making any profit in any way at the expense of the party whose interest he is bound to protect, without the fullest and most complete disclosure.

ID.—CONSENT NOT PRESUMED—BURDEN OF PROOF.—In such case the law does not presume consent, but casts the burden of proof upon the person receiving a deed in a confidential relation, or benefiting by a transaction in such relation, to prove that the transaction was fair, free from fraud, or undue influence, and made by a person in full possession of his faculties.

ID.—HONEST TRANSACTIONS NOT USUALLY CONCEALED.—Honest transactions need not be concealed, and are usually done openly in the face of the world.

ID.—ELDERLY PERSON WHOSE POWERS ARE WANING TO BE PROTECTED IN EQUITY.—The elderly person who has become feeble, and whose physical and mental powers are waning, should not be allowed to become the victim of any designing person, whoever it may be. It is to the credit of courts of equity that, in such cases, they reach out their protecting hands and restore to the weak and feeble that which has been obtained from them by improper influence or advice.

ID.—LATITUDE OF EVIDENCE ALLOWED.—In cases like the present, much latitude is allowed in the admission of evidence, and the courts necessarily are liberal in admitting evidence as to acts, conducts and expressions by the person who is claimed to have been mentally incompetent.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. J. R. Welch, Judge.

The facts are stated in the opinion of the court.

H. E. Wilcox, and D. M. Burnett, for Appellant.

W. A. Beasley, and H. R. Fry, for Respondent.

COOPER, P. J.—It is claimed that the finding of the trial court to the effect that the deed made by plaintiff was procured by undue influence, and executed while plaintiff was weak, feeble and mentally incompetent, is not supported by the evidence.

We have carefully examined the evidence in the record, and in our opinion it is sufficient to support the finding.

The plaintiff was over seventy-nine years of age at the time she made the deed to the defendant, and very feeble, being confined to her bed most of the time. The defendant was the daughter in law, of whom she was very fond, being the widow of her deceased son and the mother of two grandchildren. Defendant had, at the request of plaintiff, left her home, and devoted her time and attention to the plaintiff as companion and nurse for some weeks prior to the time the deed was made. The evidence does not show any intentional fraud or deceit

on the part of defendant, but, on the other hand, she appears
to have been kind, patient and attentive during the days and
nights she nursed and cared for plaintiff. Plaintiff was very
feeble and under the influence of medicines most of the time.
She talked a great deal, and at times incoherently, and seemed
to fear that she would lose all her property. She told defend-
ant that there were evil spirits in the house and that the spirits
kept her from sleeping. She said that a web was being woven
against her, and that the pills the doctor gave her had legs,
she could feel them crawling in her stomach. She said her
feet were Pandora's feet, and made other similar remarks.
While the evidence is not sufficient to show that she was men-
tally incompetent, yet it does show that she was delirious at
times, weak and very nervous. In such condition it is a matter
of common knowledge that one will exaggerate the virtues of
a friend who is kind and attentive, and even conceive a totally
unfounded dislike, or even hatred, to one who has apparently
been negligent or remiss. A hint or even a suggestion by one
who has gained the confidence of such weakened and feeble
person is often very potent in its results. We cannot say in
this case that during the many days and nights in which the
defendant had been faithfully and apparently lovingly at-
tending to and nursing the plaintiff, such hints or suggestions
were not made. The defendant had the deed prepared by her
own attorney. Although in the home of plaintiff's daughter,
Mrs. McGraw, the matter was not even mentioned to her, or to
her husband, Dr. McGraw. The plaintiff did not advise with
any third party, nor was it suggested to her that she do so.
The notary who took the acknowledgment was brought to the
house while Mrs. McGraw and her husband were absent. The
deed was executed, acknowledged, delivered and recorded be-
fore anyone was informed of it other than the notary. In such
case, even if we had doubts as to whether or not the deed was
the free, voluntary act of the plaintiff, and if we were inclined
to the belief that it was, we would not interfere with the
finding of the trial judge. He saw the defendant upon the
witness-stand, and had the advantage of seeing and observing
her and of hearing her voice while she was testifying. In
such case, if error is committed it is better to err in favor of
restoring the property of a feeble old woman to her dominion
and control than to err in upholding a deed given under such

circumstances as to cast suspicion upon it. Courts of equity not only view gifts and contracts which are made or take place between parties occupying confidential relations with a jealous eye, but they go further, and forbid any persons, standing in a fiduciary position, from making any profit in any way at the expense of the party whose interest he is bound to protect without the fullest and most complete disclosure. This rule applies to all the variety of relations in which dominion may be exercised by one person over another. It applies as between parent and child, guardian and ward, husband and wife, attorney and client. In such case the law does not presume consent, but casts the burden upon the person receiving such deed or benefiting by such transaction to prove that the transaction was fair, free from fraud or undue influence, and made by a person in full possession of his faculties. Honest transactions need not be concealed. They are usually done openly, in the daylight, in the face of the world. It is of the utmost importance that this class of cases should be carefully scrutinized, and in all cases set aside if attended with fraud, or if the instrument or deed is procured by undue influence. The elderly person who has become feeble, and whose physical and mental powers are waning, should not be allowed to become the victim of a designing person, whether such person be a relative, a child, a member of the same church or society or even a minister of the gospel. It is to the credit of courts of equity that in such cases they reach out their protecting hands and restore to the weak and feeble that which has been obtained from them by such improper influence or advice.

We have examined the various errors assigned by appellants as to rulings on the admissibility of testimony during the trial, and find no error of sufficient importance to justify a reversal of the case. In cases like this much latitude is allowed, and the courts necessarily are liberal in admitting evidence as to acts, conduct and expressions by the person who is claimed to have been mentally incompetent.

The judgment and order are affirmed.

Kerrigan, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 17, 1910.