[Civ. No. 6894. First Appellate District, Division One.—January 28, 1931.]

ROSE A. BOHN, Executrix, etc., Respondent, v. OSCAR H. GRUVER, Defendant and Appellant; THE UNITED LUTHERAN CHURCH IN AMERICA (a Corporation) et al., Interveners and Appellants.

A. P. Black and Fitzgerald, Abbott & Beardsley for Defendant and Appellant.

Everett J. Brown and Thomas J. Ledwick for Interveners and Appellants.

Harrison S. Robinson, Harry L. Price and Chapman, Trefethen & Chapman for Respondent.

THE COURT.—The above action was brought by Rose A. Bohn individually and as executrix of the last will and testament of Julius A. Bohn, deceased, to recover from defendant Oscar H. Gruver certain bonds of the Imperial Irrigation District, together with damages.

The testator died on April 25, 1922. After making certain specific bequests, which did not include the bonds in question, he bequeathed the residue of his estate to his wife, who is the plaintiff above named. The defendant was an executor of the will. The plaintiff alleged that the bonds, which were valued at $200,000, were owned by the testator and lost during his lifetime; that defendant thereupon wrongfully became possessed thereof and detained the same, and that demand for their possession was refused. The pleading further alleged that defendant claimed an interest therein adverse to plaintiff and the estate, and concluded with a prayer for their recovery. By an amendment thereto it was further alleged that due to their detention the interest upon the installments of interest which became due upon the bonds was lost to plaintiff and the estate; that defendant concealed the fact that he had possession thereof, and consequently the inheritance taxes due thereon to the state and federal governments were unpaid until after penalties had attached, thus causing further damage. Defendant denied that Bohn was the owner of the bonds at the time of his death or that defendant wrongfully came into possession thereof, and alleged that the same were delivered and title thereto transferred to defendant by Bohn in trust for cer-

tain charitable purposes, namely, for the use and benefit of the United Lutheran Church of America and a number of its activities, which were described in the answer. Defendant further denied the alleged concealment of the bonds and the damage averred.

The church mentioned, with certain of its corporate administrative boards, filed a complaint in intervention, alleging in substance that the bonds were transferred to defendant in trust for the use and benefit of the interveners, and prayed judgment accordingly. The material allegations of this pleading were denied by plaintiff.

According to the findings the defendant had been the pastor of a church of which the deceased was a member, and the two were intimate friends. The testator, who at the time of his death was about seventy-five years of age, reposed great confidence in the defendant, but in the month of December and for several months prior thereto and thereafter was infirm, weak in body and mind and unable to care for his property; that in September, 1921, at the request of plaintiff, defendant undertook to care for the testator so that he would not be imposed upon or dispose of his property improvidently; that defendant by reason of his influence over the testator, and due to the latter's weak condition and lack of independent advice, obtained possession of the bonds in question; that the testator, who was the owner of the bonds, did not understand or have the mental capacity to understand the nature or effect of the transactions had with defendant. It was further found that the bonds were not placed in defendant's possession by the testator with the intent to lose possession or control thereof, and that the same were not transferred in trust for the uses or purposes claimed by the defendant and the interveners or otherwise. The court also found that defendant concealed from plaintiff the whereabouts of the bonds, falsely representing to her that he had no knowledge thereof, and until September, 1925, concealed the fact that they were in his possession; that due to the concealment the inheritance taxes thereon were unpaid, and the interest which became due was not collected, causing loss to plaintiff and the estate.

Judgment was entered in favor of plaintiff for the possession of the bonds and the interest coupons which were a part thereof, it being decreed that plaintiff individually was

the owner thereof subject to administration, and that neither the defendant nor the interveners had any right, title or interest therein. In addition judgment was entered against defendant for the damage found to have been caused by his acts above described. The latter and the interveners have appealed from the judgment.

As grounds therefor it is contended that the findings are unsupported and that the court erred by not admitting in evidence a certain writing prepared by the defendant.

The testator for many years had been an active member of the church mentioned, and it is admitted that his relations with the defendant had been friendly since 1904, and that during the year immediately preceding his death the two met frequently both at the testator's home and elsewhere. The evidence shows that defendant was advised of the testator's weakened mental condition at least as early as September, 1921, when at the request of the plaintiff he agreed to exercise some supervision over the testator's business affairs. In fact, the defendant admitted that he noticed the condition described in December, 1921. The testimony on this question is voluminous and a review thereof would answer no purpose. It was amply sufficient to prove that the testator during the period when it is claimed he transferred the bonds in trust was without sufficient mental capacity to understand the nature of the transaction, and that defendant knew the fact. The record discloses no direct evidence of active influence being brought to bear to obtain possession of the bonds; and defendant claims that the suggestion that the bonds be transferred in trust came from the testator, who wished the transaction kept secret, fearing opposition from Mrs. Bohn. This was his explanation of the concealment of the facts from her which continued until the fall of 1925. In the meantime the defendant as executor, acting with Mrs. Bohn, carried on what appeared to be an active search for the property, in many instances affirmatively misleading the latter. An action was brought by the two against the Imperial Valley Irrigation District to recover the moneys payable on the maturing coupons of the missing bonds, and the complaint, which was verified by defendant, alleged that the bonds belonged to the testator at the time of his death, that the latter suffered a loss of

their possession and that their whereabouts were unknown. An inheritance tax return was also filed with the federal government, in which defendant stated under oath that the testator had not made a gift of any material portion of his estate or created a trust within two years prior to his death; also that he had not at any time made a gift in contemplation of death or any charitable gifts, and that at the time of his death no trust existed.

In addition to the foregoing, numerous statements were made by defendant which support the conclusion that he had not acted in good faith in the transaction, but sought to take advantage of the mental incapacity of the testator and the ignorance of Mrs. Bohn respecting the condition of her husband's estate. It further appears that at no time previous to the disclosure of his possession of the bonds did he inform the church authorities of the existence of the alleged trust. His possession was not disclosed to plaintiff until after she learned from other sources that her husband owned such bonds; and it is a fair inference from all the circumstances that defendant intended to convert the same to his own use and benefit. It was further shown that the defendant and the testator had jointly rented safe deposit boxes and visited the same together, and it was testified that the latter had declared his intention to make a gift to the church.

■ Appellants contend that this evidence with the fact that the bonds were found in defendant's possession strongly corroborated the defendant's testimony. The bonds, however, were not found in a safe deposit box rented by the testator or visited by him; and as against this evidence the record contains testimony that the testator declared on several occasions that he did not intend to make further substantial gifts to the church without consulting his wife.

While possession is presumptive evidence of ownership (Code Civ. Proc., sec. 1963, subd. 11), the presumption is disputable; and it has been said to be the lowest species of evidence, which may be overcome by showing the character of the possession. (*Lawrence* v. *Long Beach etc. Co.*, 44 Cal. App. 410 [186 Pac. 606].)

■ Some twelve years previous to the testator's death a divorce action was commenced against him by the plaintiff alleging cruelty. Appellants contend that this fact sufficiently shows a reason for concealing the gift from her.

As against this, however, it appears that the action was dismissed and that the parties lived harmoniously thereafter.

■ There were no witnesses to the alleged oral agreement between the testator and the defendant; and appellants claim that there being no contradiction of his testimony in this regard the trial court was bound to find accordingly. While the court may not arbitrarily disregard the unimpeached testimony of a witness (*Hynes* v. *White,* 47 Cal. App. 549 [190 Pac. 836]) who is presumed to speak the truth (Code Civ. Proc., sec. 1847), nevertheless, as provided by this section, there are methods of impeachment other than by direct contradiction, namely, by the manner in which the witness testifies, by the character of his testimony or his motives, and the jury, or the trial court sitting as a jury, are the exclusive judges of his credibility. The record shows that the defendant in parts of his testimony was evasive and quibbling; and, as held in the following cases, such facts often operate as effectively as an impeachment as does proof tending to contradict the witness: *Clark* v. *Tulare Dredging Co.,* 14 Cal. App. 414, 431 [112 Pac. 564]; *Phillips* v. *Hobbs, Parsons Co.,* 67 Cal. App. 199 [227 Pac. 622]. As stated, the defendant at different times gave versions of the transaction and made declarations respecting the property which were contradictory and at variance with his present testimony. This together with the fact that he was a party to the action were properly considered in determining his credibility. (*Konig* v. *Lyon,* 49 Cal. App. 113 [192 Pac. 875]; Wigmore on Evidence, 2d ed., sec. 966.) ■ Nor did the fact that he admitted that certain of his previous statements were false lessen their effect as impeaching evidence, and his credibility was still a question to be determined by the trial court. (*People* v. *Glover,* 141 Cal. 233 [74 Pac. 745].) Moreover, the most positive testimony of a witness may be contradicted by inherent improbabilities as to its accuracy, or where the circumstances shown tend to discredit it. (*Davis* v. *Judson,* 159 Cal. 121 [113 Pac. 147]; *Caldwell* v. *Weiner,* 203 Cal. 543 [264 Pac. 1100]; *Staples* v. *Hawthorn,* 208 Cal. 578 [283 Pac. 67].)

■ The fact that the testator was old and feeble was in view of defendant's claim a suspicious circumstance (*Staples* v. *Hawthorn, supra*); and where the alleged donor is lacking in such mental vigor as to enable him to protect himself

against imposition, although his mental weakness is not such as to justify his being regarded as totally incapacitated, an alleged gift *inter vivos* will be presumed to be fraudulent or secured by undue influence. (*Pomeroy* v. *Collins,* 198 Cal. 46 [243 Pac. 657]; *Longmire* v. *Kruger,* 80 Cal. App. 230 [251 Pac. 692].) ▮ It is also the rule that long delay in disclosing an alleged transfer, or the fact that there was no disclosure until after the death of the donor, are circumstances which render the testimony of the claimant subject to suspicion (*Plass* v. *Plass,* 122 Cal. 3, 14 [54 Pac. 372]; *Longmire* v. *Kruger, supra; Austin* v. *Wilcoxson,* 149 Cal. 24 [84 Pac. 417]; *Cox* v. *Schnerr,* 172 Cal. 371, 379 [156 Pac. 509]; *Humble* v. *Gay,* 168 Cal. 516 [143 Pac. 778]; *Estate of Emerson,* 175 Cal 724 [167 Pac. 149]; *Piercy* v. *Piercy,* 18 Cal. App. 751, 761 [124 Pac. 561]; *Castlehun* v. *San Francisco S. & L. Society,* 56 Cal. App. 220 [205 Pac. 65]); and the same is true where there are no witnesses to the transaction and no writings to substantiate the claim. (*Austin* v. *Wilcoxson, supra.*)

▮ As held in the following cases, though the burden of proof usually rests upon the person asserting fraud or undue influence, yet with respect to gifts or conveyances *inter vivos* where a relation of trust and confidence exists between the parties the extreme age and infirmity of the grantor, together with slight evidence of circumstances from which it may be inferred that the gift or conveyance was the product of coercion, will suffice to shift the burden and require the beneficiary to show affirmatively that the transaction was fair and free from undue influence. And this rule applies not only to those who bear a formal relation of trust to those with whom they deal, but in every case where there has been confidence reposed which invests the person trusted with an advantage in treating with the person so confiding. (*Longmire* v. *Kruger, supra; Cox* v. *Schnerr, supra; Schurman* v. *Look,* 63 Cal. App. 347 [218 Pac. 624].)

▮ The defendant testified that shortly after the death of the testator he prepared a written memorandum stating the circumstances under which he received the bonds, and the understanding had with the testator with respect to their application, and that this document was placed with the bonds in a safe deposit box. He further testified that the memorandum was shown to his attorney during the summer

of 1925, this being shortly before the facts were disclosed to the plaintiff. The document was offered in evidence by defendant, and upon the objection that the same constituted a self-serving declaration, was rejected. Some time before the trial defendant's deposition was taken by the plaintiff. At that time he was questioned with regard to the memorandum and the same was read into the record by plaintiff. At the commencement of the trial the defendant was called as an adverse witness by the plaintiff, and in the course of his examination, for the purpose of laying a foundation for impeachment, he was asked if he had testified in certain ways in giving his deposition. No reference, however, was made to the document in question. The deposition was not offered by the plaintiff, but by the defendant, and was admitted. When the latter sought to read the memorandum into the record, however, the same was rejected. Appellants contend that under the provisions of section 1854 of the Code of Civil Procedure the memorandum was admissible. As to this it will be sufficient to say that while the document was part of the deposition, it was no part of any act, declaration, conversation or writing of the character referred to in the above section, nor was it necessary to the understanding thereof, but was simply a self-serving declaration not made in the presence of the plaintiff. It was consequently incompetent and properly rejected. (*Hausman* v. *Hausling,* 78 Cal. 283 [20 Pac. 570] ; *Rogers* v. *Schulenburg,* 111 Cal. 281 [43 Pac. 899] ) ; and the mere fact that it was contained in the deposition did not render it admissible (*Estate of Martin,* 170 Cal. 657 [151 Pac. 138] ).

It is also urged that the memorandum tended to rebut the inference that defendant's claim was a fabrication of recent date and was admissible for that reason. While a witness who has been assailed on the ground that his story is a recent fabrication, or that he had some motive for testifying falsely, may prove that he gave a similar account of the transaction when the motive did not exist, before the effect of such account could be foreseen, or when the motive of interest would have induced a different statement (*People* v. *Doyell,* 48 Cal. 85, 91; *Hotaling* v. *Hotaling,* 187 Cal. 695 [203 Pac. 745] ; *Rogers* v. *State,* 88 Ark. 451 [115 S. W. 156, 41 L. R. A. (N. S.) 857, and note] ; *Commonwealth* v. *Jenkins,* 76 Mass. (10 Gray) 485, 489; 40 Cyc. (Witnesses),

sec. 239, p. 655), here the memorandum was produced nearly three years after it is alleged to have been made, when the motives of interest were the same, and not until the effect of the statements therein could be foreseen. These circumstances under the above rule rendered the document inadmissible. The objection was sufficient to support the ruling of the court. ██ If the exclusion of evidence is proper on any ground, the judgment will not be reversed if there appears any reason for which the evidence should have been excluded (*Spottiswood* v. *Weir*, 80 Cal. 448 [22 Pac. 289]; *Davey* v. *Southern Pac. Co.*, 116 Cal. 325 [48 Pac. 117]); and here the court might properly have excluded the memorandum without any objection being made. (*Kimic* v. *San Jose etc. R. Co.*, 156 Cal. 379 [104 Pac. 986]; 24 Cal. Jur. (Trials), sec. 57, p. 775.)

██ As stated, the complaint alleged that the bonds were lost by the testator in his lifetime. An objection is made that the findings evade this issue. The issue was immaterial, and the findings fully cover the material facts of the transaction, namely, that while defendant came into possession of the bonds, it was not the intention of the testator to lose dominion or control thereof or to transfer the title for any purpose.

Other arguments are urged in support of appellants' contention that the issues should have been decided in their favor; but the credibility of the witnesses and the weight to be given their testimony were questions for the trial court; and we are satisfied that its findings are not only fully sustained, but clearly correct.

The record discloses no prejudicial error, and no valid reason is shown for a reversal of the judgment. The judgment is affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 27, 1931, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1931.