[Civ. No. 11702.   First Dist., Div. One.   Aug. 11, 1941.]

HOWARD L. BURDICK et al., Appellants, v. BERTHA A. WITTICH, as Administratrix, etc., et al., Respondents.

Crozier C. Culp for Appellants.

Elliott Johnson and Albert M. Hardie for Respondents.

PETERS, P. J.—Plaintiffs, husband and wife, brought this action to quiet their title to certain real property in Oakland, and to obtain a decree that a note secured by a deed of trust on the property had been discharged. From a judgment for defendants, the trustee under the deed of trust and the administrator of the estate of Mary E. Davis, payee of the note, quieting plaintiffs' title subject to the deed of trust, plaintiffs prosecute this appeal. Their sole contention is that the evidence, as a matter of law, compels a judgment in their favor.

There is no doubt that the payee of the note in 1933, some four years before her death, delivered the note and the deed of trust to the plaintiffs. The basic question presented is whether such delivery was made with the intent to absolutely or conditionally cancel the note, or whether, as found by the trial court, such delivery was made "for the sole purpose of safekeeping" and "for the sole purpose of making the plaintiffs depositories of said promissory note for the purpose of safekeeping." An examination of the record discloses that, from the evidence introduced, diametrically opposed inferences are possible. There can be no doubt that, had the trial court found in favor of plaintiffs, such finding would be amply supported by the record. But, the trial court did not

so find. There is evidence, and inferences from that evidence, to support the findings. Under such circumstances, this court is without power to disturb the judgment.

The real property in question consists of two flats, two separate houses, and two garages. It yielded a monthly income of $102.50. Mrs. Davis and her husband, prior to his death in 1925, had resided on the property for many years. In 1915 the plaintiffs became tenants of Mrs. Davis, living in one of the flats. After her husband's death, Mrs. Davis lived in the other flat. Mrs. Davis and the plaintiffs became very friendly. Plaintiff Howard Burdick advised Mrs. Davis in reference to most of her investments. Plaintiff Gertrude Burdick performed many services for Mrs. Davis, visiting with her very frequently and caring for her when she was ill. This friendly attitude was reciprocated by Mrs. Davis.

In 1928 the plaintiffs purchased the property from Mrs. Davis. According to the testimony of plaintiffs, they were reluctant to 'undertake such a large obligation, but finally agreed to purchase the property upon the urgent solicitation of Mrs. Davis, and upon her promise, as a special inducement, that she would so fix it that if she should die before the note was paid, the plaintiffs would not have to pay another cent on the property. After considerable discussion, the plaintiffs agreed to purchase the property for $16,500, $2,000 down, and the balance evidenced by a promissory note calling for 6% interest payable monthly, and $1.00 or more per month on principal, the unpaid principal falling due on April 1, 1943. The note was secured by a deed of trust on the property. Following the purchase by plaintiffs Mrs. Davis continued to live upon the premises as a tenant of the plaintiffs. They continued to be the closest of friends. In fact, the uncontradicted evidence shows that the plaintiffs treated Mrs. Davis with almost the same degree of affection and consideration as if she had been their mother, and she treated the plaintiffs as if they were her son and daughter. Mrs. Davis, in 1928, was a childless widow about sixty-three years of age. Between 1928 and the time of her death in 1937 she remained very friendly with the plaintiffs. During the same period she also remained friendly with her brothers and sisters and nieces and nephews. She continued to consult plaintiff Howard Burdick concerning her investments, and at the time of her death she possessed a substantial es-

tate. All of her stocks and bonds she kept in the safe deposit box of the plaintiffs. She had no right of access to that box except through the Burdicks. Upon her death, the Burdicks turned these stocks and bonds over to the administrator.

Plaintiffs were very careful to make their monthly interest payments promptly. Never once between March 1, 1928, the date of the note, and July 12, 1933, the date the note is alleged to have been canceled, did they fail to pay the interest on or before the first day of each month. During this period very substantial amounts were also paid on the principal. On July 10, 1933, the plaintiffs had paid $6,330 on the principal, leaving a balance owing on that date of $8,170. During this period the note and deed of trust remained in the possession of Mrs. Davis.

According to the plaintiffs, the note and deed of trust were delivered to them entirely without their solicitation or suggestion. According to their testimony, on July 12, 1933, Mrs. Davis visited them and handed Howard Burdick the note and deed of trust, and stated: "Howard, here are your note and deed of trust. I am giving them to you and Gertie." She thereupon handed the documents to Howard Burdick. After Mr. Burdick had expressed his appreciation, Mrs. Davis stated: "But I wish you would pay me the same as you have done, so long as I live." At the time of the delivery of the note there was endorsed on the back thereof the following somewhat ambiguous endorsement:

"Paid to date, July 10, 1933.
Paid $8170.00.  Mary Davis."

It was stipulated that this endorsement was in the handwriting of Mrs. Davis.

After the delivery of the note and deed of trust, plaintiffs placed the documents in their safe deposit box, together with many documents belonging to Mrs. Davis. The note and deed of trust were in that box together with other documents belonging to Mrs. Davis at the time of her death. Both plaintiffs admitted that they did not know that the above-quoted endorsement was on the note, until after the death of Mrs. Davis. As already pointed out, the sum of $8,170 was not the sum paid on the principal on July 12, 1933, but was the balance due on the note on that date.

After July 12, 1933, plaintiffs continued to make regular monthly interest payments on the note. These interest payments were accurately computed and were entered in both the record book kept by Mrs. Davis and the one kept by plaintiffs. No different method of keeping the record of payments was adopted after the alleged gift than had been employed before. Mrs. Davis signed the plaintiffs' book indicating receipt of each payment. Moreover, in addition to interest payments, between July of 1933 and the death of Mrs. Davis in March of 1937, plaintiffs made substantial payments on the principal of the note. These payments totaled $1,204, and were entered in the books of the parties. Plaintiffs testified that these payments on principal were gratuitous on their part, but gladly made by them whenever Mrs. Davis needed money. Admittedly, however, plaintiffs never told Mrs. Davis that any of the subsequent payments were gratuitous.

Mrs. Burdick corroborated her husband's story concerning the alleged gift in all of its essentials. She also testified that, although the gift was made in July of 1933, between that date and March of 1937, she and her husband never discussed or mentioned the gift one to the other. Both she and her husband admitted that after the death of Mrs. Davis, and prior to the trial, they had frequently discussed the matter, and, as a result of their joint recollections, had reconstructed the story of the gift as told on the witness stand. Mr. Burdick admittedly never requested that Mrs. Davis execute a reconveyance of the property so as to complete the gift. He testified that, ''I never gave it a thought. I was just too dumb, that's all.''

Four intimate friends of Mrs. Davis testified that between July of 1933 and March of 1937 Mrs. Davis had told them that she had fixed it so that on her death the plaintiffs would have the property clear. The trial judge was of the view that this testimony was weakened by the fact that these witnesses had failed to tell a former attorney of plaintiffs, in their conferences with this prior attorney, that such statements had been made to them.

Mrs. Bertha Hardie, niece of Mrs. Davis, testified that several days after the death of Mrs. Davis she had a conversation with Mrs. Burdick in the course of which Mrs. Burdick discussed the note and asked the witness to whom the pay-

ments thereon should now be made. This conversation was denied by Mrs. Burdick.

Reference should also be made to another fact. This case went to trial on a second amended complaint. In the original and first amended complaint, as well as in a claim filed by plaintiffs against the estate, the theory upon which plaintiffs proceeded was that they were entitled to a cancellation of the note and a reconveyance of the property, by reason of an alleged contract, made for a good consideration, that the indebtedness should be canceled. The alleged consideration was the services rendered by Mr. Burdick to the deceased. Incidentally, both the first two complaints prayed that the note and deed of trust be declared void as of March 13, 1937 —not July 12, 1933, the date that it is now claimed the note was canceled. It was not until February of 1938, when the second amended complaint was filed, that the theory of a gift was first advanced in the pleadings of plaintiffs.

During the cross-examination of Howard Burdick, counsel for defendants endeavored to develop the close and intimate relationship that existed between the Burdicks and Mrs. Davis, when counsel for plaintiffs objected, and the judge stated that he was going to permit such questions which counsel for defendants stated were for the purpose of showing "a confidential relationship between each other." Counsel for plaintiffs then stated: "Do not dispute it. We admit it." Counsel for defendants then stated: "We will take that admission. It is admitted that there was a confidential relationship as understood in law that existed between the Burdicks and Mrs. Davis." Counsel for plaintiffs replied: "No issue on that at all."

On this evidence the trial court found that Mary Davis made the endorsement on the back of the note, but that "it was not the intention of the said Mary Davis in so writing upon the back of said note to extinguish the obligation of said note"; that Mary Davis delivered the endorsed note on July 12, 1933, to Howard Burdick "for the sole purpose of safekeeping, and that said delivery was not made with any intent upon the part of said Mary Davis of extinguishing said obligation, and was not made with the intent upon the part of said Mary Davis of vesting exclusive possession of said note in the plaintiffs, or either of them, but was made for

the sole purpose of making the plaintiffs depositories of said promissory note for the purpose of safekeeping, . . . and subject to the direction and right of re-possession by Mary Davis from the time of their delivery to plaintiffs up until the time of the death of the said Mary Davis.'' The court, therefore, held that plaintiffs were the owners of the property in question subject to the note and deed of trust.

Appellants urge, as they must, that these findings are unsupported, and that the evidence compels a finding that the note was canceled. There can be no doubt that the endorsement of the note, plus its delivery to its makers, could effect a cancellation thereof under §§ 3200 and 3203 of the Civil Code. But this is not the question presented. The question is whether the contrary finding of the trial court is supported by the evidence.

Appellants devote a large portion of their opening brief to establishing that a discharge could have been effected by the endorsement and delivery, with or without consideration. It is also urged that there could be a conditional renunciation, that is, a renunciation of the principal of the note conditioned upon the appellants keeping up interest payments during the lifetime of the payee. These contentions are undoubtedly sound, and are not challenged by respondents. They do not, however, present the real question on this appeal. The real question is, what was the intent with which the note was endorsed and delivered? Stated another way, does the evidence compel the conclusion that there was an intent to discharge the obligation of appellants by the endorsement and delivery, or is the finding of the trial court, that such delivery and endorsement were for the sole purpose of safekeeping supported by the evidence?

The trial court held that there was a confidential relationship between the parties, and that therefore the burden of proof rested with appellants to show the requisite intent with which the alleged gift was made. In view of the stipulation of the parties that a confidential relationship ''as understood in law'' existed between the parties, there can be no doubt that the burden of proof to show the existence of the alleged gift, including the requisite intent, rested upon appellants, and, further, that the transaction here involved, in view of such confidential relationship, was constructively fraudulent. (*Brison* v. *Brison*, 75 Cal. 525 [17 Pac. 689, 7

Am. St. Rep. 189]; *Brown* v. *Canadian Indus. Alcohol Co.,* 209 Cal. 596 [289 Pac. 613]; *Cox* v. *Schnerr,* 172 Cal. 371 [156 Pac. 509]; *Payne* v. *Payne,* 12 Cal. App. 251 [107 Pac. 148]; *Bohn* v. *Gruver,* 111 Cal. App. 386 [295 Pac. 891].) This rule is of some importance because the usual rule is that possession is presumptive evidence of an operative delivery. But where the parties stand in a confidential relationship to each other the inference that a transaction wherein the person in the superior position gains an advantage is constructively fraudulent is broad enough to include an inference against an effective delivery where the delivery is attacked.

In this connection, it should be mentioned that in their closing brief appellants urge that respondents did not plead fraud. But they did plead want of an effective delivery, averring that the manual delivery was only for safekeeping. This allegation is sufficient, in view of the relationship of the parties, to place upon appellants the burden of showing that the delivery was made with the intent to renounce the obligation.

As already pointed out, at the trial counsel for appellants expressly stipulated that "there was a confidential relationship as understood in law that existed between the Burdicks and Mrs. Davis." This confidential relationship was emphasized in their opening brief for the purpose of indicating that it was the natural thing for Mrs. Davis to make a gift of the note to them, even though they were not related to her. In their closing brief, however, after finding where the stipulation at the trial and the admission in their opening brief have led them, it is urged that, although there was a confidential relationship to a certain extent and as to certain matters, the status was not such as to place on them the burden of proof applying as between parties in a confidential relationship. Appellants cannot thus be permitted to play fast and loose with the trial court. They cannot be permitted at this late date to thus evade the legal effect of the stipulation. Moreover, independently of the stipulation, the uncontradicted evidence shows that Howard Burdick was the gratuitous agent, the confidential adviser and confidant of Mrs. Davis. The uncontradicted evidence demonstrates that there existed a confidential relationship within the meaning of the rule under discussion.

■ Appellants urge that, regardless of the above rule of law, the uncontradicted evidence of the Burdicks shows that the note was delivered with the intent to make a gift of the balance due thereon, and that this uncontradicted testimony is corroborated by the endorsement on the back of the note, and by the testimony of the four old friends of Mrs. Davis to which reference has been made. They urge that the trial court had no legal right to disregard this uncontradicted and corroborated testimony. While it is true that a trial court may not arbitrarily disregard the uncontradicted and unimpeached testimony of a witness (*Hynes* v. *White,* 47 Cal. App. 549 [190 Pac. 836]) it is equally true that the trial court is the sole judge of the credibility of the witnesses, and that the testimony of a witness may be impeached other than by direct contradiction. (*Biurrun* v. *Elizalde,* 75 Cal. App. 44 [242 Pac. 109] ; *Whitaker* v. *Whitaker,* 137 Cal. App. 396 [30 Pac. (2d) 538].) Thus, the manner in which the witness testifies, the character of his testimony, his motives, and the inherent probabilities of the situation all may be sufficient to entitle the trial court to disregard so-called ''uncontradicted'' testimony. (*Bohn* v. *Gruver,* 111 Cal. App. 386 [295 Pac. 891].) ■ Applying these rules to the present case, what is the state of the record? We have the testimony of the Burdicks as to what was said when the alleged gift was made. There is also the endorsement of the note by the deceased and her delivery of it to appellants. In addition, we have the testimony of the four witnesses as to the decedent's declarations as to her intent. Had the trial court found, on this evidence, that the decedent intended an operative delivery, undoubtedly such finding would have found support in the record, and this is so even though interest and some principal payments were thereafter made. (*Gould* v. *Van Horne,* 43 Cal. App. 145 [187 Pac. 35].) But the trial court did not so find. It found there was no intent to make an operative delivery. It, apparently, felt that the above testimony had been impeached. This conclusion is supported by the following evidence :

1. It is an admitted fact that interest and principal payments were made subsequent to the alleged gift. Although appellants sought to explain such payments the sufficiency of such explanation was for the trial court.

2. There was testimony that after the death of Mrs. Davis appellant Mrs. Burdick asked one of the relatives of Mrs. Davis where and to whom future payments on the note should be made.

3. After the death of Mrs. Davis appellants did not immediately claim that a gift of the note had been consummated, but filed a claim against the estate, and several pleadings in this action, claiming a contract based on consideration to cancel the note.

4. Important as the gift was to appellants, Mrs. Burdick testified that she and her husband did not discuss the alleged gift between themselves until after the death of Mrs. Davis. Both appellants admitted they never looked at the note to see if it was endorsed until after the death of Mrs. Davis. They took no steps to protect themselves in the transaction.

5. The story appellants told on the witness stand was admittedly the result of discussions between themselves subsequent to the death of Mrs. Davis, in which discussions they finally agreed as to the exact language used by Mrs. Davis.

6. The Burdicks had in their safe deposit box, where the note was kept, many important papers and documents admittedly belonging to Mrs. Davis.

None of these facts is conclusive. They are matters, however, that could properly be considered by the trial court in weighing the testimony of appellants. When considered with the fact that the burden was on appellants, the above evidence is sufficient to sustain the finding of the trial court and to impeach the testimony of appellants. While it is true that it is hard to explain the form of the endorsement used by Mrs. Davis except on the theory of a gift, it is equally hard to understand the conduct of the appellants. While the four friends of Mrs. Davis corroborated the appellants to a certain extent, their testimony was impeached by the testimony of a former attorney for appellants that these witnesses had not told him the story they told on the witness stand. Under these circumstances, the problem presented was peculiarly and entirely within the province of the trial court. Its determination cannot be disturbed by this court.

The judgment appealed from is affirmed.

Knight, J., and Ward, J., concurred.