Gustave J. Bosse, Petitioner v. Commissioner. Doris M. Bosse, Petitioner v. Commissioner.
Bosse v. Commissioner
Docket Nos. 3847-68 and 3885-68.
United States Tax Court
T.C. Memo 1970-355; 1970 Tax Ct. Memo LEXIS 2; 29 T.C.M. (CCH) 1772; T.C.M. (RIA) 70355; December 31, 1970, Filed John R. Skoog, Suite 1651, 1901 Avenue of the Stars (Century City), Los Angeles, Calif., for the petitioners. Robert H. Feldman, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in the income tax of Gustave J. Bosse for the calendar year 1963 in the amount of $5,173.72 and a deficiency in the income tax of Doris M. Bosse for the calendar year 1963 in the amount of $5,317.22. The only issue for decision is whether Gustave J. Bosse received income in 1963 from the forgiveness of an indebtedness by the estate of his former employer as part of a settlement agreement arising out of a legal controversy. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided in Los Angeles County, *3 California at the time of the filing of the petition in this case, filed separate Federal income tax returns for the calendar year 1963 with the district director of internal revenue at Los Angeles, California, using the cash method of accounting. Gustave J. Bosse (hereinafter referred to as petitioner) was a close friend and business manager of Hans G. M. de Schulthess (hereinafter referred to as de Schulthess) from 1955 to 1962 when de Schulthess was killed in an automobile accident in Europe. On November 16, 1959, petitioner and de Schulthess entered into a contract with respect to petitioner's employment. Petitioner agreed to act as investment advisor to de Schulthess in return for a fee of $2,000 per month plus expenses. The contract was terminable after the first year at the expiration of any quarter-year service upon 60 days' notice by either party. The contract provided that upon de Schulthess' death, petitioner would make his records and services available to de Schulthess' executors for a period of one year in return for a fee of $24,000 payable upon demand. Petitioner had a general power of attorney from de Schulthess, signature powers on de Schulthess' bank accounts, *4 and powers to withdraw from and give orders on de Schulthess' brokerage accounts. Petitioner functioned generally as a personal business manager for de Schulthess, making deposits to and withdrawals from his bank accounts, receiving his checks, paying his bills, assembling and transmitting tax data to de Schulthess' attorney, and advising de Schulthess as to business ventures and investments. Petitioner also considered himself a personal friend of de Schulthess. When petitioner was in the hospital with bleeding ulcers, de Schulthess called him and offered to pay his hospital bills. There was a specific bequest of $50,000 to petitioner in de Schulthess' will. Around the early part of September 1958 de Schulthess loaned petitioner $25,000 for which petitioner executed a 1-year note with interest at 5 percent which petitioner paid in advance. Petitioner had given de Schulthess advice regarding the stock market which proved to be good advice and de Schulthess had offered to advance petitioner the $25,000 to invest in the market. On September 3, 1959, de Schulthess asked petitioner to bring the 1-year note over to him. Then de Schulthess requested petitioner to 1773 execute a new *5 note without a maturity date and without interest. Petitioner executed a demand note without interest dated September 3, 1959. In petitioner's presence de Schulthess destroyed the original note and wrote on a piece of paper, "In case of my death… tear up. It's all yours." Petitioner observed what was written on the piece of paper. After making the notation on the paper, de Schulthess attached the paper to the new non-interest-bearing demand note which petitioner had given him and put the note with the paper attached in an envelope. He sealed the envelope and wrote on the outside of the envelope, "open only in case of my death. do not put in safety deposit box." Then de Schulthess signed his name under the notation on the envelope, handed the envelope to petitioner and told petitioner to keep the envelope with his personal papers. The envelope in which de Schulthess placed the note with the paper attached also had on it a time stamp, "1959 Jul 20 PM 4:39" and the typed name, "Mr. de Schulthess." No payment was ever requested by de Schulthess or made on the second note. De Schulthess never asked for the note. The note was kept in a locked file in petitioner's office to which only *6 petitioner and his secretary had keys. De Schulthess had a key to the office in which the file was kept. Some of de Schulthess' papers were kept in the file in which petitioner placed the envelope containing the note but his notes and securities were not kept there. De Schulthess had a safe deposit box to which petitioner had access, but petitioner did not have a safe deposit box of his own. Petitioner learned of de Schulthess' death about 3:00 o'clock in the morning on August 28, 1962. That same day when petitioner went to his office he took the envelope containing the note from the file where it had been kept and his secretary opened the envelope in his presence and wrote on the envelope "opened 8/28/62 12:35 p.m. witnessed by P. Tibbetts." After petitioner's secretary had opened the envelope in petitioner's presence petitioner handed the envelope with its contents back to her and she asked him what to do with it. Petitioner replied "What does the note say?" Two or three days later petitioner learned that his secretary had not torn the note up and asked her to return the note to him. Petitioner then showed the note to his attorney and asked advice of his attorney as to whether *7 he was liable on the note. He was told by his attorney that in his opinion the note was a gift and that he was not liable on the note but that he should retain the note, together with the attached paper and the envelope and because of his fiduciary relationship to the estate of de Schulthess disclose this information to the other executors. Petitioner was named as a coexecutor in de Schulthess' will along with two attorneys, A. Frederic Leopold and Walter A. Keane (hereinafter referred to as Leopold and Keane). Petitioner was also named as a co-trustee of the testamentary trust created by de Schulthess' will. Keane lived in New Jersey and practiced law in that State. Friction arose between petitioner and Keane because of Keane's handling of assets contained in an inter vivos trust in New Jersey which was administered by Keane. Prior to de Schulthess' death Keane had handled most of de Schulthess' legal matters and also had been cotrustee with de Schulthess of several trusts created by de Schulthess. On or about October 17, 1962, petitioner filed and presented a creditor's claim to the other two executors in the sum of $34,018.07. Of that claim, $24,000 was stated to be due petitioner *8 under the written contract of employment of November 1959, $5,874.14 was stated to be due because of an oral agreement between petitioner and de Schulthess providing that petitioner was to receive 10 percent of the profit realized by de Schulthess from investments and $4,143.93 was stated to be due for lease of office space and office expenses incurred by petitioner on behalf of de Schulthess. Petitioner's coexecutors rejected this claim. Petitioner did not inform his coexecutors of the note until they made inquiry of him concerning the original loan to him from de Schulthess. After Keane and Leopold learned of the note they filed an action in the Superior Court of the State of California seeking recovery of the face amount of the note. The suit which was filed in December of 1962 was dismissed upon petitioner's demurrer on the jurisdictional ground that the Probate Court was the proper forum for such an action. On or about February 11, 1963, petitioner filed suit in the Superior Court to recover on his rejected creditor's claims and included in his action demands for ordinary executor commissions of $8,333 and extraordinary executor commissions of $8,000 and reasonable expenses *9 incurred by him 1774 as coexecutor of the estate in the amount of $5,000. Petitioner also claimed that he would be entitled to trustee's fees in the amount of $16,000 as trustee of the testamentary trust created by the deceased de Schulthess and denied that he was liable for the payment of the $25,000 on the promissory note. Petitioner also filed a "Petition for Instructions" requesting the court's order that the estate had no valid enforceable claim on the note. The total sum sought to be recovered by petitioner was $71,350. The various law suits were eventually settled by agreement between the parties which agreement was approved by the Superior Court on August 21, 1963. The settlement consisted of a payment to petitioner of $30,000 by the estate and petitioner's agreement to resign as coexecutor and as trustee of the testamentary trust. Of the $30,000 the amount of $22,000 was allocated to the creditor's claim, $1,750 to the ordinary executor's fees, $2,750 to the extraordinary executor's fees and $3,500 to reasonable expenses incurred by petitioner. The settlement provided that petitioner would dismiss with prejudice his action filed in the Superior Court on his creditor's *10 claim and "if required dismiss his said Petition for Instructions." The settlement further provided that Leopold and Keane would "dismiss, with prejudice, and/or abandon and waive any right of appeal, in said Superior Court action" which they had brought for payment on the $25,000 note. The settlement also contained a clause which reads as follows: E. This settlement agreement does not affect in any way the right of Mr. Bosse to receive payment in full of the legacy in the amount of $50,000.00 bequeathed to him under the Will of the decedent. If, however, there is a lawful prorata reduction of specific bequest under the said Will, then it is understood that Mr. Bosse's bequest will be reduced pari passu. Also, the Estate in this agreement recognizes that Mr. Bosse is not liable for the payment of said promissory note of $25,000.00 dated September 3, 1959. The provisions of the settlement agreement had been the subject of prior correspondence between petitioner's attorneys and the other coexecutors or their attorney. Neither petitioner nor his wife reported the cancellation of the indebtedness of $25,000 as income for the year 1963. Respondent in his notice of deficiency included *11 $12,500 in the income of each petitioner for the calendar year 1962 with the explanation: It is determined that you realized income of $12,500 representing your community share of $25,000 due to the cancellation of the note at the death of Mr. Hans G. M. de Schulthess. Your taxable income is increased $12,500 accordingly. Because of the increase in the percentage limitation for medical expense deductions, petitioner Doris M. Bosse had certain medical expense deductions disallowed, further increasing her income by $171.32. The parties agree that the correctness of this adjustment is dependent upon whether respondent properly increased her income by $12,500. Opinion Petitioner takes the position that he received the economic benefit of being relieved of payment of the $25,000 note which he had given in 1959 to de Schulthess as a gift and therefore under the provisions of section 102, I.R.C. 1954, [1] such benefit did not constitute taxable income either at the date of de Schulthess' death in 1962 or in any other year. It is petitioner's position that the obligation created by the $25,000 note payable to de Schulthess expired upon the death of de Schulthess *12 in 1962 and that the estate of de Schulthess in its settlement with petitioner did not cancel, forgive, or otherwise discharge petitioner from any debt to de Schulthess' estate but merely acknowledged that no debt existed. Respondent takes the position that de Schulthess made no valid inter vivos gift to petitioner of the indebtedness evidenced by the note dated September 3, 1959, and that any attempted testamentary gift must fail because of not meeting the formalities of California law required for a testamentary gift. It is respondent's position that the provision of the settlement agreement between petitioner and the other coexecutors of the estate that the estate recognizes that petitioner is not liable for payment of the $25,000 promissory note, was a forgiveness of the indebtedness of petitioner to the estate on that note and therefore was income to petitioner in 1963. The parties join issue primarily on the question of whether the note was a valid 1775 gift to petitioner under California law. It has, of course, been recognized in a number of cases that *13 a gift which may be a valid gift under State law is not necessarily a gift within the meaning of section 102, excluding amounts received by gift from taxable income. Commissioner v. Duberstein, 363 U.S. 278 (1960). To be a gift under section 102 a transfer of property must proceed from a detached and disinterested generosity or some impulse related to affection, respect, admiration or charity. Commissioner v. Lo Bue, 351 U.S. 243 (1956), and Robertson v. United States, 343 U.S. 711 (1952). The primary factor in determining whether a transfer which would constitute a gift under State law is a gift within the meaning of section 102 is the intent of the donor and such intent is a question of fact to be determined by the Court. Commissioner v. Duberstein, supra.From the circumstances surrounding the 1963 settlement, it is apparent that if there existed a valid indebtedness which was cancelled by the estate in that settlement, such forgiveness of indebtedness would not be a gift within the meaning of section 102. In fact neither party contends to the contrary. Respondent makes some argument that even if it should be determined *14 that de Schulthess made a gift to petitioner of the indebtedness evidenced by the note, such gift would not constitute a gift within the meaning of section 102. Respondent does not strongly urge this point, apparently for the reason that any such gift would under no circumstances constitute income to petitioner in 1963, the only year here in issue. Therefore, the determination in this case is dependent upon whether in fact de Schulthess made a gift of the note to petitioner under the law of California so that there was no indebtedness owed by petitioner to de Schulthess' estate. If petitioner was not in fact indebted to de Schulthess' estate, recognition of the fact by the estate would no more constitute income to petitioner than would the $50,000 inheritance which was also recognized in the settlement. We agree with respondent that if the cancellation of the indebtedness evidenced by the note is considered as an attempt by de Schulthess to make a testamentary disposition of that indebtedness, under California law the gift must fail because of not being in compliance with the mandatory requirements for leaving property by will. In re McEuen's Estate, 18 Cal. App. 2d 180, 63 P. 2d 332 (1936). *15 Petitioner recognizes that any cancellation of the indebtedness by de Schulthess does not meet the requirement of a testamentary gift. Petitioner contends that de Schulthess made a present gift inter vivos of the indebtedness to petitioner even though the gift might have been impressed with a trust for de Schulthess' lifetime. Under California law the essentials of a gift are (1) competency in the donor to contract, (2) voluntary donative intent, (3) actual or imputed delivery, (4) actual or imputed acceptance, (5) complete divestment of control by the donor, and (6) lack of consideration. See Bank of America v. Cottrell, 201 Cal. App. 2d 361, 20 Cal. Reptr. 126 (1962). Where the issue concerns a gift of a debt to the debtor, the requirements of donative intent, delivery, and divestment of control in some instances are merely different aspects of the same problem. In the instant case respondent questions only these aspects of the alleged gift. The California cases are uniform in holding that *16 where a debt is evidenced by a written obligation the delivery of such obligation to the debtor with donative intent effectuates a gift of the indebtedness. Such a delivery is considered to completely divest control from the donor. Eckstrom v. Brooks, 115 Cal. App. 727, 2 P. 2d 207 (1931); Burdick v. Wittich, 46 Cal. App. 2d 456, 116 P. 2d 90 (1941); and Connelly v. Bank of America Nat. Trust and Savings Association, 138 Cal. App. 2d 303, 291 P. 2d 501. The confusion in the California cases arises from the factual determination which must be made in each case of whether the delivery is "with donative intent." If the delivery is for "safe-keeping" only, the cases are uniform in holding that it was not with "donative intent." Burdick v. Wittich, supra, at 93. The cases recognize that the "donative intent" necessary to effectuate a gift must be an intent to make a present gift and not a gift to take effect upon the donor's death. Gordon v. Barr, 13 Cal. 2d 596, 91 P. 2d 101 (1939). The California cases, however, hold that so long as control *17 over the evidence of indebtedness is surrendered, the fact that a life estate in the property or the income from the property for life is reserved by the donor does not cause the gift to be an invalid present gift. Gordon v. Barr, supra. That case involved mortgages which had been assigned and delivered by the original 1776 owner to her cousin who had helped her manage her affairs with "the express understanding and agreement that [the cousin] should manage and control the funds invested in said mortgages, subject to the direction of the [original owner assignor] during her lifetime, paying the income therefrom to" her for her lifetime, and that upon her death "the said funds, property and indebtedness, and all the proceeds thereof should be an remain the property" of the cousin "free and clear of any trust or obligation whatsoever." The court held that this understanding did not mean that title vested in the assignee only upon the assignor's death but merely that the funds were "free" of any trust upon the assignor's death. Gordon v. Barr, supra, decided by the Supreme Court of California, is of course distinguishable on its facts from the present *18 case in that it involved mortgages which were assigned with only the income retained by the assignor for her lifetime. However, that case has been cited as authority in a number of later California cases which involved factual situations quite comparable to the facts in the instant case. In Connelly v. Bank of America, supra, the Court also found a valid present gift. The note there involved was executed by the plaintiff to the obligee who assigned it to a third party. Thereafter, the assignee called upon the plaintiff for payment of an installment composed of principal and interest. After collecting, the assignee gave the note to the plaintiff reserving the right to collect upon it during his lifetime. The plaintiff placed the note in his safe and made payments until the death of the assignee. The court held that the retention of the right to collect both principal and interest upon the note during the obligee's lifetime did not invalidate the gift and found that the transaction met the six essentials of a present gift. In Bank of America v. Cottrell, supra, the named obligee of a note had delivered the note to a third party with instructions to cancel *19 the indebtedness upon her death. The court held that the evidence, including the obligee's refusal of payments of principal and interest on the indebtedness, were sufficient to show a present gift. The major factual difference in Bank of America v. Cottrell, supra, and the instant case is that the note was delivered to a third party in that case whereas in the instant case it was delivered to the obligor. This factual difference makes the instant case an even stronger one for concluding that a present gift was intended than the Bank of America v. Cottrell case. Prior to the decision of the Supreme Court of California in Gordon v. Barr, supra, the California courts had recognized present gifts under circumstances where the donor reserved an interest in the subject matter of the gift. Gould v. Van Horne, 43 Cal. App. 143, 187 P. 35 (1919), ivolved a suit by the executor of the estate of a decedent who had given the defendant a sum of money during her life-time, refusing to take any evidence of indebtedness in return. The decedent had requested the defendant to pay interest upon the money during decedent's lifetime and to give her any additional *20 sums she requested. The court held that the requirement that the defendant pay interest or principal to decedent during her lifetime did not cause the gift not to be a valid present gift. There is no substantive distinction in the above discussed California cases and the instant case. Here, as in those cases, a decedent retained the ability to recover during his lifetime part or all of the principal of the debt evidenced by the note delivered to the obligor, or a third party, with instructions that it was to be cancelled or destroyed upon the death of the obligee. Many of the California cases suggested a reluctance of the courts to conclude that a transfer clearly intended as a gift must fail because of being testamentary in nature. However, our problem here is not to analyze the underlying philosophy of the decisions of the California courts but rather to apply the law of that State to the facts in the interest case. Respondent argues that we should conclude from the evidence that de Schulthess delivered the note to petitioner for safekeeping and not for the purpose of placing the note under petitioner's independent control. The facts do not support this contention of respondent. *21 Respondent points out that where, as here, a fiduciary relationship exists between the parties to a transaction, the nature of the transaction must be carefully scrutinized, particularly where one party to the transaction is deceased. We agree with respondent in this respect and have carefully scrutinized the facts in this case many of which were stipulated. The California cases cited and relied on by respondent are cases in which the court concluded either that no delivery of the evidence of indebtedness had been made by the obligee to the obligor 1777 because of that evidence of indebtedness having been placed in a safe deposit box or some other place of safekeeping equally accessible to both parties or that the evidence of indebtedness had been delivered to the obligor for safekeeping for the obligee. These cases are distinguishable from the instant case on their facts. From all the facts here present, we conclude that petitioner was not at any time indebted to the estate of de Schulthess for the $25,000 since this indebtedness had been forgiven by de Schulthess in a transaction which *22 constituted a valid inter vivos gift under California law. Decision will be entered for petitioner. Footnotes
1. All references are to the Internal Revenue Code of 1954.↩