[Civ. No. 5302. First Appellate District, Division One.—September 1, 1927.]

P. A. ENGLISH, Respondent, v. FERN HAYS CULLEY et al., Appellants.

Lucien Gray for Appellants.

Emmet H. Wilson and Lucile M. Hulse for Respondent.

TYLER, P. J.—This action was commenced by plaintiff for the purpose of obtaining a decree declaring a certain trust deed made by the defendant Smith to the plaintiff to be a mortgage to secure a note executed by the defendants Culley to the plaintiff and foreclosing the same. The defendants filed an answer claiming certain credits in addition to those admitted by the plaintiff in his amended and supplemental complaint, and the action developed into one for an accounting between the parties. The amended and supplemental complaint alleged in substance that on the twenty-fourth day of June, 1920, the defendants Fern Hays Culley and B. F. Culley were indebted to plaintiff in the sum of

$49,892, and on the thirty-first day of July, 1920, they executed and delivered to plaintiff their promissory note for said amount. The note is then set forth *in haec verba*. It provides for interest at the rate of twelve per cent per annum from date until paid, interest payable semi-annually and if not so paid to be compounded and bear interest at the same rate as the principal. The complaint further alleged that on the twenty-fourth day of June, 1920, the defendant M. B. Smith, a widow, for the purpose of securing the aforesaid indebtedness and promissory note, executed and delivered to plaintiff a deed in fee simple of certain described property situated in the city of Long Beach, county of Los Angeles. That notwithstanding its form, the same was intended to operate as a mortgage as security for the debt. That as and for additional security said Smith, as a part of the same transaction made and delivered to plaintiff an assignment and transfer of all her right in and to ·a certain promissory note for the sum of $15,000, executed by her in favor of one Dora B. Morris, dated June 23, 1920. The assignment recited, among other things, that this note was due twenty-five years from the date and was being held in escrow for the benefit of the payee during her lifetime and upon her death was to become the property of M. B. Smith or her heirs, or assigns, and it was secured by deed of trust on the. property in Long Beach, which had been conveyed by M. B. Smith to plaintiff as hereinabove recited. Other allegations then allege the interest of M. B. Smith and Dora B. Morris in the property, but a recital of such interests is not necessary for a discussion of the case. The complaint proceeding alleges that defendants Fern Hays Culley and B. F. Culley have or claim to have an interest in the said lands which it is alleged is subsequent and subject to the lien of plaintiff's mortgage. Then follows an allegation as to certain payments made by defendants upon the note sued upon and the prayer for judgment foreclosing defendants' rights in the property. Defendants, by an amended and supplemental answer, alleged in substance that plaintiff had been receiving since March 1, 1921, a rent of $160 per month from the Long Beach property, and on January 1, 1921, received $2,245.71 and on May 1, 1921, $1,000 to apply on the note and had received other items of interest from collateral security held by plaintiff as

additional security for said note; that on or about October 15, 1921, plaintiff had received $25,500 on said note and on or about January 6, 1922, a further sum of $15,000. For a second defense and counterclaim they allege that on said last-named date defendants Culley delivered to plaintiff a certain note in the sum of $15,000, known as the Delano note, made by one D. M. Alexander to order of plaintiff secured by a deed of trust on real property situated in Kern County, and that on July 10, 1922, plaintiff received the sum of $15,940 in payments thereon and had refused to credit said sum or any part thereof on the note sued upon. As a third separate defense defendants alleged that on July 31, 1920, defendants Culley delivered to plaintiff a note for $32,500, dated June 15, 1920, executed by Kate and John Haering and indorsed by J. R. Milligan in favor of defendant Fern Hays Culley and secured by a trust deed by the makers on certain real estate in San Diego County, and that said Fern Hays Culley assigned said $32,500 to plaintiff as collateral security; that plaintiff received $1,500 on the principal of said note and also received interest thereon amounting to the sum of $745.71; that said note was on January 1, 1921, surrendered and a new note for $31,000 dated December 13, 1920, executed by Haerings and Milligan in favor of Fern Hays Culley secured by a like trust deed, and also assigned to plaintiff as collateral security and that plaintiff received on said note on May 1, 1921, a payment of $1,000 and interest in the sum of $1,695; that plaintiff declared a forfeit on said $31,000 note and trust deed and caused said premises to be sold; that prior to such sale plaintiff agreed with defendants that if they would not appear and bid at such sale plaintiff would take the $31,000 note as his own at a valuation of $25,500 and would credit such amount on their indebtedness and that by reason of such promise they did not attend or interfere with the sale. For a fourth separate defense and counterclaim defendants alleged all the facts set up in the third defense and also that prior to the date of sale plaintiff agreed with one Connor to sell to him the real estate described in the trust deed for the sum of $30,000, in addition to all charges and expenses incurred or paid by reason of the sale, and that Connor at that time agreed to purchase the same for such amount; that at the date of the sale the property was reasonably worth the sum of

$50,000. That plaintiff acquired the property at the sale for the sum of $20,000 and received a conveyance thereof, and immediately thereafter conveyed the same to one Ober at the request of Connor, who thereupon paid plaintiff the sum of $38,303.41 for said conveyance to Ober; that if defendants had not understood from plaintiff that he would, upon acquiring the property under the sale, credit them with the sum of $25,500 upon their note they would have attended the sale and bid the sum of $35,000 for the property; that plaintiff refused to credit them with the $25,500 as agreed or to account to them for any part of the proceeds realized from said sale to Connor, or to credit their note with any sum whatsoever derived from the sale except the sum of $11,520.24. For a fifth and separate defense and by way of counterclaim defendants alleged that the $31,000 note was further secured by a chattel mortgage upon certain farming utensils, which mortgage was also transferred to plaintiff as security for the indebtedness sued upon; that said personal property was of the value of $7,000; that plaintiff converted a large amount thereof to his own personal use and has refused to account to defendants for the same. They prayed that plaintiff be compelled to credit them with the various amounts claimed to be due them and an accounting was asked for to ascertain this amount. Among other facts, the trial court found that plaintiff did not agree to take the $31,000 Haering trust deed note for $25,500 as his own, and credit the note sued on with said amount as alleged by defendants, but that such agreement was upon condition that defendants pay the balance of their indebtedness in cash, which they failed to do. It found that plaintiff bid in the property at the trust deed sale for $20,000; that plaintiff's bid was the only one received at such sale, but that the property was worth $40,000; that plaintiff credited the note sued on with the sum of $13,592.31, the net proceeds of said sale. At the trial plaintiff offered and there was received in evidence an itemized statement of all expenses incurred by him in the care of the property sold under the trust deed and the expenses of sale, which amounts were deducted from his bid of $20,000. The trial court disallowed several of these items, thereby increasing the amount of the credit on defendants' indebtedness, but allowed an item of $855.39, as interest, which defendants claim to be an im-

proper charge. The court further found that plaintiff did not receive the $15,000 Delano trust deed note to apply on the note sued on, but found that said $15,000 was given to secure other claims of plaintiff and that only a balance of $6,330.41 received by plaintiff from the $15,000 note was to be credited on account of the note sued upon. It was also found that plaintiff and Connor did not agree to sell and purchase the property in the $31,000 Haering trust deed, and that Connor did not pay to plaintiff $38,303.41 as alleged by defendants or any other sum. With reference to the claim that plaintiff had permitted the farming utensils subject to chattel mortgage to be removed or lost the finding was against defendants. The court rendered judgment for plaintiff in the sum of $38,120.55 as of February 5, 1923, with attorneys' fees and costs. Defendants have specified numerous errors as grounds for reversal. It is first claimed that error was committed by the trial court in rejecting all evidence to sustain the allegations of the defense and counterclaim that plaintiff had agreed to sell, and did sell to Connor for $38,303.41, the property included in the Haering and Milligan trust deed and that such agreement was made prior to the date that plaintiff bid in the property for $20,000. The findings of the trial court that no such agreement was made or that Connor ever purchased the property exists solely for the reason that the court rejected all evidence upon this subject and then found negatively that there was no evidence to support defendants' allegations with reference thereto. In this connection it is appellants' contention that the trial court erred in the rejection of this evidence for the reason that as plaintiff held the Haering and Milligan note and trust deed as collateral security for the payment of the note given by the defendants Culley to the plaintiff, he was a pledgee, and his position was, therefore, that of a trustee, and, consequently, any profit made by him out of the transaction while such pledgee inured to the benefit of the pledgors, the defendants Culley. Plaintiff, on the other hand, claims that he exercised his lawful right in making the sale in a lawful way. That as a pledgee holding a mortgage as collateral security for a loan, he had the right to foreclose the same when due and purchase at his own foreclosure sale, and it is no concern of the defendants whether or not he subsequently sold the property

and made a profit. ■ While this may generally be true, still, the relation existing between parties to a transaction, where collateral security is placed in the hands of a pledgee as security for the payment of a debt with power of sale in case of default, is in the nature of a trust. The responsibility of the pledgee to the pledgor is similar to that of a trustee; he holds the stock for specific purposes—namely, to return it to the pledgor in the event of payment of the indebtedness or if sold by him either at public or private sale to so act that the sale will be fair and *bona fide.* The fact that the pledgee himself may become the purchaser, by reason of the code provision which was not permitted at common law, affords an additional reason why the pledgee is held to the utmost good faith in dealing with the pledged property. (*Hudgens* v. *Chamberlain,* 161 Cal. 710 [120 Pac. 422].) ■ Defendants charged and sought to prove that plaintiff prior to the sale had entered into negotiations for a private sale of the land, and in fact had actually sold the same. That the price he received under this arrangement was $38,303.41 and the price he paid was only $20,000, a profit of $18,303.41. By his act in negotiating the sale, assuming the rejected evidence to be true, he certainly practiced an imposition amounting to fraud upon the defendants. It is reasonable to suppose that but for the arrangement with Connor the latter would have himself bid at least the amount he agreed to pay to plaintiff. It was the duty of plaintiff to collect all that he could from the security pledged to him for application on the principal debt. Assuming the arrangement with Connor to be a fact, such arrangement on his part certainly tended to prevent the accomplishment of this result. Here there is an express finding that the interest in the property was worth $40,000. ■ While mere inadequacy of price may not be sufficient ground for refusing to give full effect to a sale of this character, still where such inadequacy is apparent and great, very slight additional evidence is sufficient to impeach it. (*Winbigler* v. *Sherman,* 175 Cal. 270 [165 Pac. 943].) It is a circumstance therefore, to be considered with the claim that plaintiff had arranged for a private sale of the lands at a price approximating the value found by the court. The private arrangement would certainly tend at least in some degree to create a weak market, thus preventing the obtain-

ing of a fair price. It certainly shows a lack of good faith and fair dealing with the pledged property and places plaintiff in an attitude antagonistic to his trust, and such interference with the sale tends to impeach the fairness of the transaction. (*Odell* v. *Cox*, 151 Cal. 70 [90 Pac. 194].) Here no right of redemption existed, and a profit made under the claimed circumstances should inure to the benefit of defendants. Nor can the plaintiff avoid his duty to account for a profit made under such circumstances by claiming that he did not purchase pledged property, which was the note and trust deed, the real property being mere security. Plaintiff cannot by such a claim change the nature of the transaction. Plaintiff sold the security which he held as pledgee as evidenced by the note and trust deed, and if, as claimed, he interfered with the sale so as to acquire the property, for less than it was worth, and did so acquire it, he should be made to answer for the profits realized. Upon this subject, therefore, we conclude that the trial court erred in rejecting the offered evidence. Appellants further object to an allowance to plaintiff of certain items of expense claimed by him to have been incurred in the care of the property sold under the trust deed and which was deducted from his bid of $20,000 before crediting the amount to defendants. ▆ The first of these items has reference to a charge of accrued interest for $855.39. We are of the opinion that there is no evidence in the record to support the allowance of this claim. Plaintiff testified with reference thereto that he thought it was expended by him for interest on a prior mortgage existing on the property sold, but he expressed a doubt upon the subject. On cross-examination he admitted that the amount was computed by an officer of a bank. The evidence, however, conclusively shows that the amount was computed by such officer as accrued interest on the $30,000 trust deed note under which the sale was made. The interest on this note has been paid up to October 1, 1921. The officer computed the interest due up to the date of sale which took place February 25, 1922. This collateral note bore interest at the rate of seven per cent per annum and at simple interest the amount of accrued interest totaled $845.80. Plaintiff revised these figures by compounding the interest which then totaled the sum of $855.39, the exact amount charged and allowed.

It is manifest that defendants should not be charged with the amount of this item. It was part and parcel of the security purchased by plaintiff for which he paid $20,000. He never expended this or any other sum as accrued interest on this note or any other obligation to anyone, so as to entitle him to a credit. It was part of the security which he held and subsequently purchased. As counsel for appellant suggests if the property had been sold to a stranger the full amount of the purchase price would have to be paid by him; and plaintiff is in no different position. It is true the interest was due on the collateral note which he held, but so was the principal. He purchased the property secured by the note for this indebtedness and he paid $20,000 for the same. He could not then credit himself with the accrued interest any more than he could with a part of all of the principal. He was therefore not entitled to a credit of this amount and the court erred in allowing it to him. █ The same may be said with reference to the credit allowed plaintiff for cattle feed, and which was deducted by him from the amount received under the Delano trust deed. The evidence upon the subject shows that plaintiff while in possession of the lands under the trust deed produced feed amounting to the sum of $2,352. This feed was by him fed to certain cattle upon the lands. It was produced upon the land and the expense of its production was charged to defendants. It was therefore a profit arising from the land for which he was bound to account to defendants. The allowance to plaintiff of this amount as a credit was therefore unauthorized. And, finally, appellant contends that the interest provided for in the note sued upon is usurious and void by reason of the provisions of section 2 of the Usury Law (Stats. 1919, p. lxxxiii). As hereinabove recited, the note provides for the payment of the principal sum of $49,892 "with interest at the rate of 12 per cent per annum from date until paid, interest payable semi-annually and if not so paid to be compounded, . . . and bear the same rate of interest as the principal; and should the interest not be paid semi-annually then the whole sum of principal and interest shall become immediately due and payable at the option of the holder of this note." The Usury Law provides in substance that no greater sum for the loan or forbearance of money shall exceed the rate of twelve dollars

upon one hundred dollars for one year; and in the computation of interest it shall not be compounded nor shall the interest be construed to bear interest unless an agreement to that effect is clearly expressed in writing and signed by the party to be charged therewith. It also provides that any agreement or contract of any nature in conflict with the provisions of this section shall be null and void as to any agreement or stipulation therein contained to pay interest, and no action at law to recover interest· shall be maintained and the debt cannot be declared due until the full period of time it was contracted for has elapsed. Counsel for respondent urgently insists that a contract for the payment of interest semi-annually at the maximum legal rate and compounded if not so paid is not usurious, but merely states a penalty for failure to pay interest when due. He also insists that the defense of usury was not pleaded and therefore cannot now be raised. In addition, he argues that the Usury Law violates the constitution of the state and the constitution of the United States, all of which, it is pointed out, are designed to prevent arbitrary and unwarranted discriminations and classifications. A discussion of these questions would answer no useful purpose. The note here sued on does, in express terms, provide for interest at the maximum rate per annum, payable semi-annually, and if not so paid to be compounded, and bear the same rate of interest as the principal. Since the submission of this cause our supreme court had handed down three opinions which discuss the Usury Law invoked by appellants. In *Haines* v. *Commercial Mtg.* Co., 200 Cal. 609 [255 Pac. 805], it is held that a contention that as long as the limit of the rate of interest is maintained at twelve per cent per annum, the compounding of the interest, if not paid at the time provided for, should be allowed, is in the teeth of the statute itself and cannot be maintained. It has also been held that it is not necessary to plead usury where the contract shows on its face its usurious character. Under such circumstances it is the duty of the court *sua sponte* to deny any interest (*Wallace* v. *Zinman,* 200 Cal. 585 [254 Pac. 946]). The constitutionality of the act has likewise been passed upon and upheld. (*In re Washer,* 200 Cal. 598 [254 Pac. 951]; *Wallace* v. *Zinman, supra.*) Other questions, considering our conclusions, become unimportant.

The trial court found that plaintiff was entitled to judgment on the note sued on, together with interest at the rate of twelve per cent per annum, compounded annually. The note provided in unambiguous terms for compounding the interest semi-annually. The Usury Law declares such a note to be null and void as to the agreement to pay interest. The mere fact that the judgment, contrary to the terms of the note, provides for compounding the interest annually, does not free the note from its illegal taint. (39 Cyc. 1003.) The usurious transaction having been completed, the penalty attaches. A large amount of the judgment is made up of interest charges, and to that extent it is unauthorized.

For the reasons given the judgment is reversed.

Knight, J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on October 31, 1927.