[Civ. No. 7723.   Third Dist.   Nov. 25, 1950.]

LOREN BLOYD et al., Respondents, v. FLOYD SENN et al., Defendants; JOHN GRONAU, Appellant.

Geary, Spridgen & Moskowitz for Appellant.

Burke & Rowles for Respondents.

PEEK, J.—This is an appeal by John Gronau from a judgment of the court finding him liable under the provisions of Vehicle Code, section 402, as having impliedly consented to the operation of his automobile by his codefendant Floyd Senn. Defendant Senn defaulted, and the trial proceeded against appellant alone. The sole question on appeal is whether the evidence, or any inference reasonably drawn therefrom, supports the finding that Senn was driving the Gronau automobile within the meaning of said section 402.

The Gronau and Senn families had been friends for some time. Between the hours of 3 and 5 o'clock on the afternoon of October 5, 1947, they met at the Mendocino County Fair at Boonville. From that time until approximately 11 o'clock that evening Mr. and Mrs. Gronau and Mr. and Mrs. Senn spent most of their time in taverns at Boonville. During this time the Gronau children, aged 2, 9, 12, and 15, were left to roam the fair by themselves. When the four adults finally decided to leave they were all intoxicated. Meanwhile the children had returned and were in the Gronau car. Shortly after Mr. Gronau left in Senn's automobile with Mrs. Senn driving, Senn and Mrs. Gronau left in the Gronau automobile. Within a few minutes the Gronau car was involved in a collision, caused solely by the negligent operation of the Gronau car. As a result both plaintiffs were injured.

One Maurice Parish testified that he was traveling a short distance behind plaintiff's truck and that he came upon the scene of the accident immediately thereafter. He went to the Gronau car where he found Senn slumped over the steering wheel unconscious, and Mrs. Gronau, also unconscious, was on the floor underneath the dashboard and on top of her 2-year-old baby.

Officer Ingram of the highway patrol testified that while Senn was at the home of a doctor in Cloverdale he arrested him for violation of section 501 of the Vehicle Code on a complaint made by John Gronau. The officer further testified that a short time thereafter defendant stated to him that Mrs. Gronau was driving at the time of the accident. However, the next morning, while on their way to the justice court in Boonville, where he pleaded guilty to the crime charged and paid a fine of $300, Senn admitted to the officer that he was driving the car.

When called under section 2055 of the Code of Civil Procedure Senn denied making any such statement. His explanation of why he pleaded guilty and paid the fine, although claiming that he was not driving the car, was that he did not want to spend any more time in jail, that he "wanted to get it cleared up for the children's sake," and "I thought if I would pay my fine . . . the talk would quit."

Mrs. Gronau's testimony concerning the operation of the car by Senn was that after leaving Boonville Senn kept pestering her that he wanted to drive, that he finally took the ignition key from the lock, and when the car stopped, went around to her side of the car; that he then shoved her away from the wheel, started the car and drove off. She further testified as he shoved her away from the wheel she thought he had his fist doubled up, and that she was very frightened. Although she talked with Officer Ingram she mentioned nothing about her fear of Senn striking her if she did not let him drive. As soon as he shoved her out of the driver's seat, she took her smallest child, aged 2, to the front seat with her and sat in silence until just before the accident when she turned to Senn and said, "Oh Floyd, please don't drive so fast." She further testified that at no time did she tell Senn that he could drive. The three older Gronau children, Donald, Melvin and August, corroborated her testimony concerning Senn's acts when he took over the driving.

At the conclusion of the trial, the court, in a memorandum opinion, which was a part of his order for findings, stated that by reason of the mental and physical condition of the parties and their obvious interest in the case it was impossible to determine which, if any, were testifying truthfully. Furthermore, he said the intoxicated condition of all of the parties made it impossible for him to determine what were the true facts. The court then discussed in detail the wit-

nesses, their testimony and their discussion generally while on the witness stand and concluded that he should wholly disregard the testimony of "all of these occupants of the Gronau car and decide the case according to the facts established by other witnesses and by inferences properly to be drawn." The court, continuing its discussion of the record, reviewed the testimony of the other witnesses and further concluded that from all of the facts and circumstances the reasonable inference to be drawn therefrom was that Senn was driving the Gronau car with either the express or implied consent of either Mr. or Mrs. Gronau or both.

The only question argued by appellant on appeal is that there is no reasonable basis for the finding that Senn was driving the Gronau car with the implied consent of either Mr. or Mrs. Gronau.

The law is well established that under section 402 of the Vehicle Code "the owner is liable to the extent there limited if his permittee consents to another driving, at least where the permittee accompanies the driver." (*Hicks* v. *Reis*, 21 Cal.2d 654 [134 P.2d 788].) Thus, in the case of *Van Horne* v. *Lim*, 18 Cal.App.2d 624 [64 P.2d 448], the evidence showed that the defendant purchased a car which was registered in his name, that he did not drive, that the car apparently was to be used by his son; that at the time of the accident there were several other persons in the automobile and that one of them corresponded to the description of defendant's son. At the time of the trial the son was in China and the defendant offered no evidence except that when called under section 2055 of the Code of Civil Procedure he stated that his son had told him of the accident some two weeks subsequent thereto. In affirming the judgment in favor of the plaintiff the District Court discussed the sufficiency of the record and the reasonableness of the inference drawn therefrom by the trial court, and held that it was "sufficient to show that appellant's son, for whose use appellant had purchased the automobile, was riding in appellant's automobile at the time of the accident and it may be inferred therefrom that either the son or one of the other Chinese, with the consent of the son, was driving said automobile."

It is the further rule that under the provisions of section 1847 of the Code of Civil Procedure the trial judge, as the trier of the facts and the exclusive judge of the credibility of the witnesses, their motives and their interests in the result of the case, is free to accept testimony of a witness

or to reject the same even though uncontradicted, provided he does not act arbitrarily. (*Hicks* v. *Reis, supra.*)

Applying the rule as stated to the facts and circumstances as shown by the record before us we cannot say that the trial judge acted arbitrarily in rejecting the testimony of certain witnesses as he did, particularly in view of his detailed observations of them and their conduct, nor can we say that the trial court was not justified in drawing the inference that permission existed, which, from our examination of the entire record, we conclude to have been reasonable.

The judgment is affirmed.

Adams, P. J., and Van Dyke, J., concurred.