[Civ. No. 19341. Second Dist., Div. Two. June 10, 1953.]

KATHERINE WADE, Respondent, v. MARKWELL AND COMPANY (a Corporation), Appellant.

Grainger, Carver & Grainger and Harry M. Irwin for Appellant.

Levy, Bernard & Jaffe, Saul J. Bernard and Reuben Freeman as Amici Curiae on behalf of Appellant.

A. Brian Weinberg for Respondent.

FOX, J.—This is an appeal by defendant company from a judgment for defendant's conversion of plaintiff's coat.

At the outset of the trial, defendant objected to the introduction of any evidence on the ground that plaintiff's first amended complaint failed to state facts sufficient to constitute

a cause of action for the recovery of her coat or its value. After briefly taking testimony, plaintiff served on defendant her second amended complaint, and it was on the allegations of this pleading that the case was subsequently tried. There can be no quarrel with this procedure. ■ A court may exercise great liberality to permit the amendment of a pleading at any and all stages of the proceedings in order to present adequately the necessary issues. (*Redondo Imp. Co.* v. *Redondo Beach*, 3 Cal.App.2d 299, 302 [39 P.2d 438]; 21 Cal. Jur., p. 183.)

In her second amended complaint, plaintiff made the following material allegations: That on March 23, 1949, she was the owner of a full length mink fur coat which, at that time, had a value of $4,800; that on said date, defendant orally represented to her that "if the plaintiff would permit the defendant to retain possession" of her coat, defendant would give her $300 as a loan thereon and send her written notification of the expiration date of the loan and that she need not be concerned about reclaiming the coat until such time; that plaintiff, relying upon these representations by defendant, through its agents, which representations defendant knew to be false, placed her coat in defendant's custody, whereupon defendant delivered to plaintiff the sum of $270, withholding the sum of $30 as prepaid interest on the loan in violation of section 17, page 2675 of the 1939 Statutes of California; that at the time of this transaction defendant gave plaintiff a written receipt, reproduced in part as follows:

"Los Angeles, Calif., 3-23, 1949 . . . F 16926

"I hereby pledge to Markwell & Co., the following described property, to wit:

1—Natural Eastern Mink Coat
Anglefetzer Cleveland Label

to secure the payment of a loan in the sum of

"Three Hundred . . . Dollars $300.00 (The receipt of which is hereby acknowledged) together with interest and charges as herein provided. It is agreed that said loan shall bear interest and/or other charges from date until paid at the maximum rate permitted by the statutes of California. . . .

"It is further agreed that the last day of redemption of this pledge shall be thirty (30) days after the date hereof. . . . In the event of default I expressly waive demand of performance and the giving of notice of time and place of sale and

agree that said property may be sold at public or private sale and that pledgee may be a purchaser if the property is sold at such sale . . . I agree that the fair market value of the above described pledged property is not more than 125 percent of the principal amount of the said loan. . . . '' that notwithstanding any valuation appearing in the written receipt, plaintiff and defendant agreed that the fair market value of the coat, as estimated by defendant's agent, was between $4,500 and $5,000.

The complaint further recites that about November 23, 1949, defendant sent a written notification to plaintiff notifying the plaintiff of the expiration date of the loan and requesting plaintiff to repay the loan and reclaim the coat; that on the same day this notification was received, plaintiff telephoned defendant and orally represented to defendant's agents that she had received the aforesaid notification and would recover the coat before the weekend, in response to which defendant's agents represented that the coat would be available for plaintiff to reclaim within a week; that on or about November 25, 1949, plaintiff orally demanded of defendant the return of the mink coat, offering to defendant's agents ''the sum of $270 as repayment of the loan, plus any accrued interest or charges; that defendant's agents refused to accept such tender and refused to return the coat; that defendant orally represented to plaintiff that it had sold the coat to a third person, whose name defendant's agent refused to divulge, in violation of section 342 of the Penal Code; that defendant's act of disposing of the coat was unlawful and was to plaintiff's damage in the sum of $4,800.

The complaint prayed judgment ''for the recovery of possession'' of the coat or, in the event delivery could not be had, its value of $4,800.

Defendant's contention that the complaint does not state facts sufficient to constitute a cause of action is without merit. In support of this contention, defendant argues that there is no allegation that plaintiff has ever paid or tendered to defendant the sum for which her coat was pledged. It relies on the fact that the first amended complaint alleges an offer to pay the sum of $270 in repayment of the loan, which is the exact amount which the complaint alleges plaintiff received from defendant, and is insufficient because it does not include any of the accrued interest or charges from March 23, 1949. This insufficiency was cured in the second

amended complaint, on which the issues were tried, by plaintiff's allegation that to redeem her coat, she offered defendant's agents the sum of $270 in repayment of the loan, plus any accrued interest or charges.

It is further argued that since, in the pledge agreement, which is recited in the complaint, plaintiff acknowledged the receipt of $300, plaintiff could not comply with her obligation to defendant without alleging a tender of $300 together with interest and charges. ■ However, where the consideration recited in a contract is different from the consideration actually received, a party is not bound by the written recital, but may allege and prove the true consideration passing between the parties. (Code Civ. Proc., § 1962(2); *Johnston* v. *Courtial*, 216 Cal. 506, 510 [14 P.2d 771]; 6 Cal.Jur., p. 197 et seq.) This is precisely what plaintiff alleged in her complaint, along with her offer of payment of the amount due under the allegations. ■ Having thus alleged a demand accompanied by sufficient tender, defendant's refusal to restore her coat, and certain other facts tending to show defendant's fraudulent dominion over the coat inconsistent with her right to immediate possession, the complaint contains all the requisites of a cause of action for conversion. (*Baird* v. *Olsheski*, 102 Cal.App. 452 [283 P. 321]; *Gustafson* v. *Byers*, 105 Cal.App. 584 [288 P. 111].) ■ While it may be conceded that the complaint was somewhat ambiguous and uncertain in its allegations of an unlawful sale of the coat by defendant and greater particularity with respect to the transaction would have been desirable, the rule is that uncertainties in a complaint are waived by failure to demur on that ground. (*Redondo Imp. Co.* v. *Redondo Beach, supra,* p. 303.) ■ An objection to the introduction of any evidence "does not serve the function of a special demurrer for uncertainty, and as no such demurrer was filed, any uncertainties that we find to exist are to be resolved in favor of the complaint's sufficiency. (Citation.) None but a defect at an essential point will justify an order sustaining an objection to the receipt of any evidence." (*Bauer* v. *Neuzil,* 66 Cal.App.2d Supp. 1020, 1023 [152 P.2d 47]. See *Gallagher* v. *California Pac. T. & T. Co.,* 13 Cal.App.2d 482, 486 [57 P.2d 195].)

Defendant makes the further point that the pledge agreement, as alleged in the complaint, fixes April 22, 1949, as "the last day of redemption of this pledge" and the pledgee had the statutory right (Stats. 1939, ch. 951, p. 2667) to sell the pledge upon the expiration of six months after the

last day of redemption, viz: after October 22, 1949. Therefore, it is argued that the alleged oral representations made by appellant's agents on November 23, 1949, that the coat "would be available for plaintiff to reclaim within a week" is not valid or binding on defendant because (a) neither the written pledge agreement nor the alleged written notification to plaintiff of the expiration date of her loan can be orally altered nor can the expiration date specified therein be extended orally, and (b) there was no consideration for the alleged extension of the time for plaintiff to reclaim her coat. These arguments are without foundation, since they misconceive the effect of plaintiff's allegations with respect to her conversation with defendant regarding her redemption of the coat. ■ Her pleading may well be construed as raising a promissory estoppel against defendant, which is well recognized either as a "species of consideration" (*Porter* v. *Commissioner of Internal Revenue*, 60 F.2d 673, 675) or as a substitute for consideration. (1 Williston on Contracts (rev. ed.) 139; 3 Pomeroy's Equity Jurisprudence, 5th ed., § 808 (b).)

According to the complaint, plaintiff received a notification from defendant requesting her to repay her loan and reclaim her property. Thereupon plaintiff orally informed defendant that she was ready to do so, and was advised by defendant's agents that she had a week within which to reclaim the coat. Relying on this representation, plaintiff alleges that she appeared two days later with proper tender, only to be told that the coat had been sold. ■ ■ Assuming the truth of these facts, as we must when considering the sufficiency of her pleading after an objection to the introduction of evidence (*Miller* v. *McLaglen*, 82 Cal.App.2d 219 [186 P.2d 48] ; *Scott* v. *Cline Electric Mfg. Co.*, 104 Cal.App. 122 [285 P. 349]), a situation has been pleaded under which it would be proper to invoke the doctrine of promissory estoppel as embodied in section 90, Restatement of Contracts: "A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

■ The allegations indicate that at the time plaintiff telephoned, the coat was available for redemption and plaintiff was induced by defendant's representations to forbear from immediately redeeming under the assurance **that** it

would be held for her for at least another week. In the interim, while plaintiff refrained from exercising her right to redeem in reliance on a promise calculated to induce such forbearance, defendant sold the coat so that it was not available when plaintiff made her alleged tender. Under such circumstances, it lies not in the mouth of the party making a promise which induces forbearance of a substantial character (here the loss of a right to redeem a pledge) to maintain that his promise cannot be enforced by the party aggrieved since it was unsupported by consideration, for the principle of promissory estoppel does not rest upon a consideration moving to the party estopped. (*Carpy* v. *Dowdell,* 115 Cal. 677, 687 [47 P. 695].) ▮ In the case last cited the court states: ''The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden.'' The court goes on to cite the case of *Van Syckel* v. *O'Hearn,* 50 N.J.Eq. 173 [24 A. 1024], in which defendant purchased property encumbered with a mortgage lien upon the strength of a promise made by plaintiff mortgagee that he would withhold enforcement for a year. Plaintiff commenced foreclosure within the year. In holding plaintiff to his promise, the court, after conceding that normally a consideration must be shown to support a promise, said: ''But a court of equity will sometimes prevent parties from disregarding their promises, even when no consideration has accrued to them upon the making of such a promise. If a party . . . waive strict performance of his contract and makes promises to the defendant upon which the latter acted and altered his position, and it should appear to the court to work a hardship on the defendant to allow the complainant to withdraw his waiver, a court of equity always applies the doctrine of estoppel. In such a case, although no consideration or benefit accrues to the person making the promise, he is the author or promoter of the very condition of affairs which stands in his way; and when this plainly appears, it is most equitable that the court should say that they shall so stand. (Citations.)'' See, also, *Hunter* v. *Sparling,* 87 Cal.App.2d 711, 725-726 [197 P.2d 807], for a discussion of the doctrine of promissory estoppel and a partial citation of the cases applying the principle.

Defendant's contention that plaintiff is precluded by section 1698 of the Civil Code from attempting to vary the terms of the pledge agreement is without force in light of the facts already discussed, which establish an estoppel to rely upon section 1698. This is illustrated by the language of the court in *Wilson* v. *Bailey*, 8 Cal.2d 416, 421-422 [65 P.2d 770] : "And likewise, while it is settled in view of section 1698 of the Civil Code which provides that a written contract may be altered by a contract in writing, or by an executed oral agreement and not otherwise, . . . nevertheless, it is also true that the facts of a particular case may give rise to an equitable estoppel against the party who denies the verbal modification." In *Panno* v. *Russo*, 82 Cal.App.2d 408 [186 P.2d 452], a case involving an oral extension of the time fixed in a written sales-contract for payment of the price by the buyer, the court reiterates the rule that section 1698 is subject to the exception that a party to the contract may be estopped by his conduct or representations from denying an oral modification. In *D. L. Godbey & Sons Const. Co.* v. *Deane*, 39 Cal.2d 429, 432 [246 P.2d 946], where the entire problem is reviewed, the court cites both the Wilson and Panno cases, *supra*, in recognizing that an oral modification of a written agreement may be shown when the facts establish an estoppel to rely on section 1698. So here, the allegations, which we must accept as true, are that plaintiff was misled into believing, at a time when she was ready to redeem her coat, that she was being given an extra week in which to repay the loan, during which time the coat was sold by defendant. In effect, plaintiff alleges she was induced by oral representations of defendant's agents not to exercise her rights under the contract while performance was still possible; this is sufficient to bring plaintiff within the rules heretofore discussed. Nor is the complaint fatally defective in that there is no allegation that defendant authorized its agents to alter the terms of the written pledge agreement or to make the alleged extension. Whether the defendant corporation did or did not authorize its agents to make the representations alleged involves evidentiary facts constituting a matter of defense, "which it would be contrary to the very first rules of good pleading to aver in the complaint." (*Union Trust Co.* v. *Dickinson*, 30 Cal.App. 91, 97 [157 P. 615] ; *Malone* v. *Crescent City Mill & Trans. Co.*, 77 Cal. 38, 42 [18 P. 858].)

Defendant's answer denied generally all of the allegations in the complaint not expressly admitted. It alleged the making of the pledge agreement and plaintiff's receipt of the $300 loan pursuant thereto (except for the retention of $3.50 to pay for fumigation and demothing of the coat) and plaintiff's default in repayment. The answer further alleged that defendant sold the coat at public auction after proper notice of sale more than six months after the last date to redeem; that it became owner of the coat by making the highest bid, applying the proceeds in satisfaction of plaintiff's debt with no surplus remaining and that it thereafter resold the coat. It alleged that plaintiff made no demand for return of the coat until after the resale.

After trial of the issues, the court made findings of fact which furnish a concise summary of certain salient aspects of the transactions between the parties. The findings are that on March 23, 1949, plaintiff delivered her coat to defendant as security for a loan to her of $300 "together with interest and other charges." The coat was a full length, natural dark mink and was acquired by plaintiff in November, 1948, at a cost of $3,750, to which was added a luxury and sales tax, making the total price paid by plaintiff $4,612.50. At the time the coat was delivered to defendant it was in first class condition and defendant requested that it be demothed prior to being placed in storage, for which a charge of $3.50 was made by defendant and deducted from the amount of the loan. It was also agreed that the coat would be cleaned and glazed by defendant at a cost of $15, which plaintiff was to pay at the time of the redemption of her coat.

At the time the coat was delivered in pawn, a written pledge agreement was entered into, which truthfully set forth the amount of the loan as $300, a description of the pledged property, interest rate, and redemption date. The court found, however, that a statement in fine print in the instrument reading: "I agree that the fair market value of the above pledged property is not more than 125 per cent of the principal amount of the said loan" was untrue, was not negotiated between the parties, and was not in keeping with the valuations communicated between the parties at the time of the pledge. The court found, instead, that counsel stipulated facts fixing the valuation as above described, namely, that the purchase price was $3,750, plus taxes. Simultaneously with the making of the pledge contract and loan, defendant delivered to plaintiff an envelope in which to

enclose the agreement upon which was printed: "We suggest that you phone us 24 hours in advance of redemption." Thereafter, plaintiff's account was charged $4.00 per month interest, as well as $15 for defendant's cleaning of the coat. It was found that when the loan expired in 30 days, plaintiff had not repaid the principal, interest, or cleaning charges and that defendant continued to charge $4.00 interest for nine months, up to and including December 22, 1949.

On or about November 22, 1949, plaintiff informed defendant by telephone that she intended to redeem her coat and asked if the 24-hour notice was necessary, at which time she was told that such notice was required and was further informed that she could make her payments and redeem her coat at any time within the succeeding week. The court found that plaintiff presented herself at defendant's office "within the period of time fixed, to wit, a week, and in fact within the month of November, and was informed that her account had been closed." On demanding to know what disposition had been made of her account, she was informed that the coat had been sold and the amount received at the sale credited to, paying off, and closing her account. The findings state "it was not true that the account was closed and that the coat had been sold, and the court finds that at the time of the declarations of Markwell & Co. that such had taken place, Markwell & Co. had charged interest on the loan up to and including December 22, which was many days thereafter, and that the coat was in the possession of Markwell & Co., and that Markwell & Co. had conducted a fictitious proceeding in which a purported sale had purportedly been made, which sale consisted of nothing more than one member of Markwell & Co. declaring the coat for sale and another member of Markwell & Co. then declaring that the coat was sold to itself for the amount due on the loan . . . that no effort was made to find a buyer at a fair value, that the interest was charged at the time, and that the purported sale was fictitious, and that the seizing of the coat and the declaration of the closing of the account for the amount of the loan was wrongful."

The court further found that subsequent to the fictitious sale, while the coat was still in defendant's possession and interest was being charged on the loan for a period of time which has not yet expired, defendant rejected plaintiff's offer to pay up to $1,000 to recover her coat, but instead sold the coat two weeks after the sale to a third party for $1,500 and

refused to disclose to plaintiff the identity of the purchaser upon plaintiff's request for this information. It was found that a coat such as plaintiff's "has a reasonable life for use of 8 years when . . . given reasonable care, and that the reasonable value of the coat at the time of its delivery by Markwell & Co. to the person who purportedly purchased it was the sum of $3,278.00." The court concluded that defendant had converted plaintiff's coat and awarded plaintiff the sum of $2,927.00, and interest from December 22, 1949 ($351.00 having been deducted as the amount of the loan, plus $36.00 interest and $15.00 for cleaning).

The record is replete with sharply conflicting testimony, presented on the one side by plaintiff as the principal witness in her own behalf, and by defendant's chief witnesses—E. R. Woodruff and L. M. Irving, president and secretary, respectively, of defendant corporation, and Levan Tootikian (referred to as Mr. Levon), an employee of defendant who qualified as an expert on fur values and with whom plaintiff negotiated the pledge contract. Viewed in the light most favorable to plaintiff as the party prevailing below, it is clear that on November 23, 1949, plaintiff received from defendant the following notice: "If you desire to renew your loan contract No. F16926, we ask that you kindly call at our office previous to November 25, 1949, as otherwise we will close and terminate the account." Plaintiff at once telephoned defendant's office and spoke to a female employee of defendant to whom she stated that she was then ready to call for her coat and inquired if 24 hours' advance notice was required. Upon being informed that it was, and the next day being Thursday, November 24, 1949 (Thanksgiving Day), plaintiff stated the coat would be called for on Friday or Saturday, November 25 or November 26. Thereupon defendant's employee stated she could come at any time within the following week. Plaintiff telephoned again, either on Friday or Saturday, and informed the girl taking her call that she was sending her son to pick up the coat and asked that it be made available to him. Plaintiff was informed that the coat was not there and the call was transferred to a person plaintiff identified as Mr. Levon, with whom plaintiff had originally negotiated the loan, who also informed her that the coat was unavailable. Plaintiff was referred to Mr. Woodruff, whom she telephoned several times to discuss redeeming her coat. Mr. Woodruff stated the coat had already been sold. Plaintiff testified she pleaded with Mr. Woodruff

to allow her to redeem the coat, offering him first three or four hundred dollars and then as much as $1,000 to no avail. Defendant's witnesses denied these incidents or conversations had occurred.

The record shows that on November 22, 1949, defendant had already listed plaintiff's coat on a "Notice of Pledgee's Sale," a three-page document containing some 280 items, which was posted in three public places, giving notice that a pledgee's sale would be conducted on November 29, 1949, at defendant's place of business. If plaintiff's testimony last described is believed, then the statements made to her that the coat had already been sold at the time she called were false. With reference to the pledgee's sale, the sole testimony relating thereto came from defendant's agents, since plaintiff was never given actual notice of the sale (and had, in fact, waived notice under the pledge agreement). The actual sale was conducted in the private office of defendant's president, which is a room at the extreme rear of defendant's place of business. This room is reached by a corridor 18 or 20 feet long from the main waiting room, which is adjacent to the entrance to defendant's premises. Along the corridor are several small booths in which loan transactions are made. There are two doors at the opposite ends of the corridor which open respectively into the outer waiting room and the president's office. It was testified that these doors were never closed throughout the sale, and that there was no visual obstruction to anyone who might desire to walk from the outer room of its place of business into the office where the sale was held. Mrs. Irving testified that Mr. Woodruff conducted the sale and displayed plaintiff's coat on a desk in his office before asking if there were any bidders. Mrs. Irving bid $351 in behalf of defendant, and no higher bid being made, Mr. Woodruff declared the bidding closed and the coat sold to defendant for the amount of the bid. Mrs. Irving and Mr. Woodruff were uncertain as to whether any other persons were present at the time of the sale. Neither could remember whether anyone else was present. Mr. Woodruff stated he believed others had attended the sale. Mrs. Irving disclaimed any specific recollection of attendance by members of the public at that particular sale and conceded "it could be" that no one but her and Mr. Woodruff was present. Mrs. Irving stated that her bid was $351 because she had erroneously calculated the interest as being due for nine months,

or $36, at the time of the sale, whereas only eight and one-fourth months had actually elapsed from the date of the loan.

Defendant contends that the court's finding that the pledgee's sale was a fictitious proceeding is contrary to the undisputed evidence. ■ It is argued that defendant complied fully with all the technical requirements of the law in selling plaintiff's coat "at public auction, in the manner and upon notice of sale of personal property under execution" as prescribed in the applicable statutes. (Civ. Code, § 3005; Code Civ. Proc., §§ 692, 694.) Yet however much there may be external, literal compliance with the formalities of the law, and however comprehensive may be the power of sale vested in a pledgee, the circumstances attending such a sale are subject to strictest scrutiny by the courts. (*Henning* v. *Akin*, 91 Cal.App. 246, 255 [266 P. 981]; *Toplitz* v. *Bauer*, 161 N.Y. 325 [55 N.E. 1059, 1061].) ■ For the relation between pledgor and pledgee, wherein the latter is empowered to sell a pledge placed in his hands as security for a debt in the event of default, is in the nature of a trust. (*English* v. *Culley*, 85 Cal.App. 291, 297 [259 P. 355]; *Hudgens* v. *Chamberlain*, 161 Cal. 710, 716 [120 P. 422].) ■ Occupying a status akin to that of a fiduciary, and being accorded by the code powers in derogation of the common law such as the right himself to become a purchaser at a sale wherein the pledge may be disposed of without notice to the debtor, if so agreed upon, there is all the more reason why the pledgee is held to the utmost good faith in his transactions both with the pledged property and the pledgor. (*Hudgens* v. *Chamberlain*, supra; *English* v. *Culley*, supra. ■ Though the pledgor has waived virtually all the protection afforded him at common law, he has not waived the right to have his collateral sold at an honest sale to the highest bidder. For it has been held that even where a contract waives notice and permits a sale to himself, the pledgee is still a " 'trustee to sell,' not to buy, though with the privilege of buying, if fairly sold." (*Dibert* v. *Wernicke*, 214 F. 673, 681 [131 C.C.A. 109].)

It is manifest that the court was not satisfied that the circumstances attending the sale were such as would adequately discharge the pledgee's responsibility of trust, as well as his regard for the interest of the pledgor. ■ For broad as may be the powers lodged in him, the pledgee cannot "wantonly sacrifice the property" or purchase ".at a valuation so inadequate as to suggest a fraudulent purpose" or engage in

conduct incompatible with his status as a fiduciary. (*Buder* v. *New York Trust Co.*, 82 F.2d 168, 170 [104 A.L.R. 1035] ; 76 A.L.R. 722, and cases there cited.) The evidence in the case at bar clearly lends itself to the interpretation placed on it by the trial judge—that the sale was basically a clandestine one conducted in the office of the president of the company, in a part of the premises least accessible to outside bidders, with possibly no one present but two officers of defendant corporation, the sale being consummated for a price in conspicuous disparity with the worth of the collateral, and under circumstances smacking of oppression and indifference to plaintiff's interest. It was little more than a secluded drama wherein defendant arrogated to itself dominion over the coat for the amount debited to plaintiff. But defendant contends that the uncontradicted testimony of its witnesses establishes the regularity and genuineness of the sale. However, in view of the relation of Woodruff and Mrs. Irving to the defendant pledgee and their obvious interest in the transaction the trial court was not required to accept as true their testimony of what transpired at the sale in the former's office or of the accessibility of the place of sale to prospective purchasers (*Bloyd* v. *Senn*, 100 Cal.App.2d 597, 600 [224 P.2d 117] ; *Lohman* v. *Lohman*, 29 Cal.2d 144, 149 [173 P.2d 657] ; *Scheff* v. *Roberts*, 35 Cal.2d 10, 15 [215 P.2d 925] ; *Burdick* v. *Wittich*, 46 Cal.App.2d 456, 464 [116 P.2d 90].)

 It may be observed that the very notice of sale given to the public by pledgee shows a callous insensitivity to its duty to attempt to procure the highest price possible. In a notice consisting of about 280 items listed in three pages of closely spaced typewriting, plaintiff's coat is identified as "Loan Contract F16926 1 fur coat." At the bottom of the third page appears the following: "Reference is made to said contracts for full particulars and for full descriptions of the property and the amounts paid on said respective contracts." This character of perfunctory advertising can scarcely be said to do justice to plaintiff. Her coat was not just a fur coat—it was a full length, natural eastern mink coat and was entitled to that description. Such a notice should also disclose the amount of the debt; for this publicizes to the potential purchaser the expected range of bidding within which he may procure a desirable item. Mere reference to a loan agreement is an unrealistic way of achieving the purpose for which notice of sale is intended—that of

stimulating interest in the sale and procuring bidders to the end that a pledgor gets the full measure of protection. (*Laclede Nat. Bank* v. *Richardson,* 156 Mo. 270 [56 S.W. 1117, 1118, 79 Am.St.Rep. 528] ; *Hagan* v. *Continental Nat. Bank,* 182 Mo. 319 [81 S.W. 171] ; Seasongood, *Drastic Pledge Agreements,* 29 Harv.L.Rev. 277, 282-283.) This is all the more significant where the pledgee itself is conducting the sale pursuant to an agreement prepared by it which gives it power of sale with no notice to the pledgor. To sanction any conduct but that of highest probity and adherence to the trust relationship would be to ignore completely the spirit of the code in authorizing the pledgee's right to make a contract to sell without notice and to become a purchaser at his own sale; and if, as defendant implies, this is the usual practice resorted to among loan brokers, then it would appear to this court that the time has come to rectify a custom that lends itself too facilely to abuse and frustration of both the legislative intent and the trust relationship of the parties to the contract.

While it is unquestionably true that mere inadequacy of price alone will not render a pledgee's sale invalid, the rule is well established that where the price obtained is greatly disproportionate to the actual value, very slight evidence of unfairness or irregularity will suffice to give relief to an aggrieved party. (*Winbigler* v. *Sherman,* 175 Cal. 270 [165 P. 943] ; *Odell* v. *Cox,* 151 Cal. 70 [90 P. 194].) From all the findings made and their consequent inferences, as well as from the evidence already discussed, there is clear support for the finding that the sale was a fictitious proceeding. In *Winbigler* v. *Sherman, supra,* p. 275, the court quotes the following language from *Schroeder* v. *Young,* 161 U.S. 334 [16 S.Ct. 512, 40 L.Ed. 721], in support of the court's right to impeach the fairness of a sale, resulting in a foreclosure for a palpably inadequate price: "If the sale has been attended by any irregularity . . , if any undue advantage has been taken to the prejudice of the owner of the property, or he has been lulled into a false security; or if the sale has been collusively or in any other manner conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price, the sale may be set aside, and the owner may be permitted to redeem."

Certainly the evidence before the court strongly suggests that plaintiff was misled to her detriment by being told, at a time before the sale and when she was ready to redeem, that

she could come any time within the succeeding week. The court could reasonably infer from all the evidence that defendant was following a well-prepared program whereby it hoped "to acquire a valuable property for a paltry sum by following the forms of law but in defiance of the elemental rules of equity . . . " and where "the sale was conducted in such manner that the full value of the property could not be realized," and where the principal interested bidder had been kept away. (*Turner* v. *Milstein,* 103 Cal.App.2d 651, 655-657 [230 P.2d 25].)

But independent of the actual conduct of. the sale, there are other grounds for sustaining the judgment of conversion. At the time plaintiff received her notification from defendant, notice of sale had already been posted. ▉ Though she had waived notice, she was nevertheless entitled to full disclosure of the pending sale when she called in reference to . defendant's notification regarding redemption of her coat or renewal of her loan. After having itself extended the time for redemption to November 25th by a communication upon which plaintiff relied, and having, through an agent clothed with ostensible authority, granted her a particular period in which to redeem, it was manifestly inequitable for defendant to proceed with a strict foreclosure without notice to the pledgor. In 72 Corpus Juris Secundum, Pledges, page 121, the rule is stated: "The right of the pledgee to sell without notice may be waived by the pledgee even where it is stipulated that the sale may be made without notice, and such waiver requires no new or independent consideration to support it. The waiver may be made either expressly or it may be implied from the pledgee's conduct, . . ."

▉ In the often-cited case of *Toplitz* v. *Bauer,* 161 N.Y. 325 [55 N.E. 1059, 1061], the court says: "The pledgee doubtless has the right to exact strict performance of the contract according to its terms, and, upon default in the payment of the debt at the time stipulated, he may, under a contract like this, dispose of the pledge. But if he waives the right to exact strict performance and gives time and indulgence to the debtor, he cannot recall this waiver at his own option, without notice to the pledgor, to the end that the latter may have an opportunity of protecting the pledge. The good faith which the law exacts from a person dealing with trust property will not permit the pledgee, after having once waived the forfeiture or right to dispose of the pledge upon default of payment at the prescribed time, to suddenly

stop short and insist upon the forfeiture for the nonpayment of the debt when the other party is unprepared to redeem. Strict performance in such cases may be waived by any agreement, declaration or course of conduct on the part of the pledgee which leads the owner to believe that a forfeiture will not be insisted upon without an opportunity given him to redeem. (*New York Life Ins. Co.* v. *Eggleston*, 96 U.S. 572, 577 [24 L.Ed. 841]); . . .'' This language applies with especial appositeness to the case at bar.

Defendant asserts that the finding that plaintiff ''presented herself'' at its office within the week allowed her only to be informed that her coat had been sold and the account closed is lacking in evidentiary support. There may be some doubt about plaintiff's physical presence at defendant's office but that is immaterial. The important thing is that she was advised by defendant's agents that her coat was not available and had been sold and the account closed. Plaintiff testified that she was so advised by Levon and Woodruff, when she telephoned on Friday or Saturday following Thanksgiving Day stating she was sending her son to pick up the coat and requesting that it be delivered to him. Thus the information relative to the sale of her coat and the closing of her account was communicated to her by telephone rather than across the counter. Such inexactness cannot possibly justify a reversal of the judgment.

These statements which, however, were not true, explain plaintiff's failure to send her son to pick up her coat and excused her of the necessity of making a tender of an amount sufficient to cover the loan, interest and charges because the law does not require the doing of an idle act. (Civ. Code, §§ 3532 and 1511(3); *Hulen* v. *Stuart*, 191 Cal. 562, 568 [217 P. 750]; *Barnes* v. *Osgood*, 103 Cal.App. 730, 734 [284 P. 975]; *Woods-Drury, Inc.* v. *Superior Court*, 18 Cal.App.2d 340, 348 [63 P.2d 1184].)

It is argued that plaintiff is estopped to question the validity of the sale because by her subsequent negotiations to obtain the coat from defendant she must be held to have ratified the sale.

It is true that a pledgor is deemed to have ratified a sale ''where, without objection, and with knowledge of his rights, he commences to treat with the pledgee purchaser with a view to acquiring the property. . . .'' (21 Cal.Jur., p. 372.)

But that is not the situation here, where plaintiff at all times questioned the propriety of the sale. Of her conduct it may be said that there has ''been no ratification if the

pledgor, while offering to buy the property, should protest against the sale, although offering to buy it for the sake of peace." (*Hill* v. *Finigan,* 77 Cal. 267, 275 [19 P. 494, 11 Am.St.Rep. 279].)

Defendant contends that the damages of $3,278 awarded to plaintiff are exorbitant and excessive and not supported by any evidence. He argues that Mr. Levon, qualifying as an expert furrier, testified that in his opinion the coat was three years old and worth $500 at the time it was pledged since it was matted, worn, and soiled in many places. He also testified that a fur coat depreciates as much as one half, for purposes of resale, as soon as it is worn. He testified that the life of an evening mink coat given ordinary care by a prudent person is between five and ten years. He also testified that before the coat was resold, it was repaired, relined and restyled. Plaintiff's testimony was in sharp contradiction. She stated that her coat was brand new when she purchased it, that it was in perfect condition at the time she deposited it with defendant four months after the purchase and that she had only worn it two months. She testified that Mr. Levon stated "You must have paid $4,500 or $5,000 for the coat" when she first showed it to him. In placing a valuation on the coat, plaintiff testified at one point that it was worth $5,000 and at another point that its value to her was what she had paid for it. It is undisputed that the coat was in storage with defendant until the time of its resale. ▮ Thus, the court had before it contradictory and conflicting evidence as to value and condition. The court was not necessarily bound to accept the opinion of Mr. Levon but could look to other evidence of value in the light of all the surrounding circumstances. (*Linforth* v. *San Francisco Gas & Electric Co.,* 156 Cal. 58, 63 [103 P. 320, 19 Ann.Cas. 1230]; *Birkhofer* v. *Krumm,* 27 Cal.App.2d 513, 541 [81 P.2d 609].)

▮ "It is a recognized rule that the owner of property, whether generally familiar with such values or not, is competent to estimate its worth . . ." (10 Cal.Jur. 1023.) ▮ Also, "testimony as to cost of goods is a circumstance tending to show value." (*Ibid.*) ▮ Such evidence may be taken into consideration, along with other circumstances such as the extent of the use of the property and its condition and depreciation, in order to determine the subsequent value of the property and establish the loss sustained as the result of an unlawful conversion. (*Kirstein* v. *Bekins Van & Storage*

*Co.,* 27 Cal.App. 586 [150 P. 999] ; 24 Cal.Jur., p. 1060.)
On the basis of the evidence as to the life of a mink coat, the range of figures before it as to the value of the coat and its obvious belief that the coat was at all times while in defendant's possession in first class condition, the court arrived at the figure of $3,278 as a fair value at the time of conversion. The record therefore contains substantial evidence to support the finding of the trial court as to value of the property converted. (*Griffin* v. *Porter,* 54 Cal.App.2d 254, 255 [128 P.2d 820].) The "amount of compensation . . . must be left to the sound discretion of the trial court, to be ascertained and adjudged after consideration of all the facts and circumstances established by the evidence in the case." (*LeBrun* v. *Richards,* 210 Cal. 308, 320 [291 P. 825, 72 A.L.R. 336].) The weight of the evidence on value being a question for the determination of the trial judge, "it is not the province of this court, upon a review thereof, to determine otherwise." (*Hood* v. *Bekins Van & Storage Co.,* 178 Cal. 150, 152 [172 P. 594].) The fact that the court used the mathematical formula of computing depreciation of the coat by taking a pro rata average based on an estimated life of eight years does not justify a reversal of the case. It is the duty of an appellate court on the subject of damages "to uphold the findings if it is possible to do so upon any sound theory." (*Crystal Pier Amusement Co.* v. *Cannan,* 219 Cal. 184, 192 [25 P.2d 839, 91 A.L.R. 1357].) The method used by the trial court is accepted practice in many fields and was justifiably employed in the case at bar in order to award plaintiff "an amount sufficient to indemnify the party injured for the loss which is the natural, reasonable and proximate result of the act complained of. . . ." (Civ. Code, § 3336 ; *Bedell* v. *Mashburn,* 87 Cal.App.2d 417, 423-424 [197 P.2d 98].) The court merely resolved conflicts on the issue of value against the defendant. (*Gruber* v. *Pacific States Sav. & L. Co.,* 13 Cal.2d 144, 150 [88 P.2d 137].)

Defendant's contention that the fact that after the coat was reconditioned it was sold for only $1,500 proves conclusively that the sum of $3,278 damages is excessive cannot be sustained. Such price on resale is not conclusive of its value. (*Breznikar* v. *T. J. Topper Co.,* 46 Cal.App.2d 435, 438 [116 P.2d 176].) This is especially true where the pledgee seller has acquired the chattel at a very low figure and even at the resale price has netted for himself a very

substantial profit. There was no inducement for defendant to find a purchaser at its true value when it could reap a handsome—and quick—profit at the amount for which it sold the coat.

▇ Defendant argues that the judgment must be reversed because the court made no finding as to the value of the coat at the time of the conversion. (Civ. Code, § 3336.) The finding of the court was that "the reasonable value of the coat at the time of its delivery by Markwell & Co. to the person who purportedly purchased it was the sum of $3,278." Defendant urges that if any conversion occurred, it took place at the time of the pledgee's sale on November 29, 1949. Even under this theory, defendant's argument cannot prevail. In *Woodbine* v. *Van Horn*, 29 Cal.2d 95 [173 P.2d 17], the trial court erroneously failed to compute damages on the basis of the market value of certain wood at the time of conversion, using instead its value either at the time of the filing of the complaint or at the time of trial in computing the amount of the judgment. The court states (p. 109) : "But the error of finding the value as of the date of the commencement of the action does not require the reversal of the judgment. The complaint was filed about a month after the conversion and the testimony covers the wholesale market value of the wood during the period from the time of conversion until the commencement of the action. . . . The finding of damage in the amount of $1 per cord is, therefore, supported by evidence of market value at the date of the conversion." Similarly in the case at bar, the testimony covered the value of the coat during the entire period from the time of its purchase by plaintiff to the time of the resale to Mrs. Enquist, which occurred only 17 days after the purported pledgee's sale. Therefore, as has already appeared, the finding of the damage is supported by evidence of value at the time of conversion, the court having considered all the factors involved.

▇ But it may also be added that defendant was guilty of successive conversions—the last being the sale to Mrs. Enquist—and the court was justified in treating this later conversion in its findings as the time for computation of damages. Up to the time of such resale, defendant still had it in its power to return the coat to plaintiff and receive the amount due upon the pledge. ▇ Its exercise of total dominion over plaintiff's property by its act of resale, even though believing it had the right to do so, constituted a conver-

sion. (*Bancroft-Whitney Co.* v. *McHugh,* 166 Cal. 140, 143 [134 P. 1157].)

Certain minor points raised by defendant do not require discussion since they are unnecessary to the determination of the case and could not possibly affect the result.

The judgment is affirmed.

Moore, P. J., and McComb, J., concurred.